## MARSHALL v. RUGG.

LANDLORD AND TENANT — PLEADING — AGENCY — TERMS OF LEASE CONSTRUED — EVIDENCE — ACTION OR SUIT.

1. The surrender of a lease, and of the land, under an agreement for such surrender, terminates the relation of landlord and tenant, but not the relation of debtor and creditor on account of liabilities already incurred at the time the agreed surrender of the lease is carried into effect by the delivery of possession of the premises.

2. A petition contained two causes of action. One was for damages for failure to turn over to the lessor the property "at the expiration of this lease" in as good order and condition as when entered upon by the lessee. The other was for the recovery of the sum of money agreed to be paid by the lessee in consideration of an acceptance by the lessor of a surrender-

of lease before the expiration named in the lease.   Defendant moved that the plaintiff elect on which cause of action he would proceed.   Held, that the causes of action were not inconsistent, and said motion was properly overruled.

3.   Authority may be conferred by parol for an agent to execute a lease not required to be under seal.

4.   A lease not signed by the principal, but by and in the name of an agent, is admissible in evidence in an action for damages against the principal for waste committed during the occupation of the premises by her, notwithstanding the statute of frauds.

5.   It is not the duty of the court to weigh the evidence and decide which party has the preponderance when the matter has been properly submitted to a jury.

6.   Evidence examined and held to be sufficient to support a verdict against the defendant as the unnamed principal for whom certain property was alleged to have been leased.

7.   The covenant in a lease to restore possession of the leased premises in good condition at the expiration of the lease is, in case of its violation, actionable.

8.   The right of action in such case accrues, if at all, at the same time with the expiration of the lease and not afterward.

9.   Whenever a tenancy terminates in any way before the expiration of the term named in the lease, the lease is as effectually at an end as if it had expired by the lapse of its term. No rights or liabilities can afterward accrue under it ; but this does not affect rights or liabilities already matured

10.   A covenant in a lease as follows :   "Said lessees further agree to turn over to said lessor all of said property at the expiration of this lease in as good order and condition as when entered into by them," is sufficiently broad to include actions for damages in the nature of waste, and other actionable damages to the leased property, done or permitted by the lessees during their tenancy, and not repaired at the time of the expiration of the lease, at which time any liability for its breach accrues and matures.

11.   The phrase "expiration of this lease" is not confined to the expiration of the term named in the lease, but means the expiration of the lease not only by such lapse of term but also by agreement of surrender before that time, or by any circumstances which cause a termination of the lease.

12. Where the lease was surrendered by agreement upon an agreed consideration, and the premises surrendered thereunder prior to the expiration of the term named in the lease. In an action for damages for breach of the covenant to turn the property over in good condition, Held, that the lease expired upon the surrender within the meaning of the phrase "expiration of this lease."

(Decided April 16, 1896. On rehearing June 30, 1896. Commenced in District Court May 3, 1894.)

ERROR to the District Court for the County of Laramie, HON. RICHARD H. SCOTT, Judge.

Charles F. Rugg brought the action against Mary R. Marshall to recover the sum of $1,275. The petition contained two causes of action: 1. A claim by way of damages in the sum of $1,175 for the violation of a covenant of the lease providing for a return of the premises at the expiration of the lease in as good condition as when entered upon. 2. Upon a contract for the payment of the sum of $100 in consideration of the consent of plaintiff that defendant might surrender the lease prior to the time of expiration named therein.

The defendant filed a motion to require plaintiff to elect upon which of the two causes of action he would rely. The motion was based upon the proposition that the two causes of action were inconsistent. The motion was denied, and defendant excepted. The answer was a general denial. The case was tried to a jury and a verdict returned in favor of the plaintiff, and the damages assessed at $686.16. Motion for new trial was presented and overruled, to which the defendant excepted; and judgment was entered upon the verdict. The defendant brought the case to the Supreme Court by petition in error.

Rugg leased his ranch under a written agreement between himself on the one part and Daniel Marshall and Frank C. Marshall on the other. Mary R. Marshall was the owner of another ranch and some cattle located in the

same neighborhood, and Daniel Marshall, her son, resided thereon and had charge of the cattle, working on a salary for his mother. Frank C. Marshall, another son of Mary R. Marshall, resided at Longmont, Colo. Both Daniel and Frank C. Marshall testified that they leased the Rugg ranch for themselves and that their mother had no interest in it. Neither Daniel or Frank had any cattle of their own, but their mother's cattle were pastured on the Rugg ranch. Frank subsequently represented her in the sale of the cattle to Ora Haley, and in the contract of sale the cattle or some of them were to remain on the Rugg ranch until delivery. Frank testified that when he leased the ranch from Rugg he intended to buy some cattle on his own account, but he did not carry out that intention for lack of means. Daniel left Wyoming in January, 1893. The theory of the plaintiff, Rugg, was, that as Mrs. Marshall owned all the ranch property and live stock cared for by her said sons, and as the leased ranch was used for her benefit in the pasturage of her cattle, she was the unnamed principal, and that Daniel and Frank leased the property for her although in their own names.

The lease was surrendered in June, 1893, in accordance with an agreement by correspondence between Rugg and Frank C. Marshall, in consideration of the sum of one hundred dollars to be paid to Rugg. The other material facts and testimony are referred to in the opinion.

*Frank H. Clark,* for plaintiff in error

The effect of a surrender of a lease is to terminate the relations and obligations of landlord and tenant (4 Wait's Ac. & Def., 213; Gear L. & T., 192–93), and discharges the tenant from liability under the lease. (De Morat v. Falkenhagen 23, Atl. 1125; Dantzig v. Falkenberg, 18 N. Y. Supp., 927.) Plaintiff sues upon the provisions of a contract which has been wiped out completely, and at the same time for compensation for wiping out the former contract, and seeks to recover upon both.

The causes of action are inconsistent, and plaintiff should have been compelled to elect upon which one to proceed. (Abbott's Tr. Br., 410, 643 et seq.; 18 Am. and Eng. Ency. L., 500–1.) Damages under the covenant in the lease requiring the premises to be turned over in good condition at the expiration of the lease, could not be claimed on the 1st of June, 1893, the term of the lease being until May 3, 1894. (Gear L. & T., 22, 28, 74, 82; 4 Wait's Ac. & Def., 242.) The agreement upon which suit for such damages should have been brought is the agreement for surrender, but upon that contract only $100 is claimed — the agreed compensation for surrender of the original lease. The foundation of the second agreement was the annihilation of the first.

If Mary R. Marshall was the lessee, the lease was void under the statute of frauds, as she did not sign it, nor any agent duly authorized. The testimony does not establish that she was the principal and Daniel and Frank her agents in the transaction. (Mechem on Agency, 73 et seq., 519 et seq.; 1 Am. and Eng. Ency. L., 231 et seq., 1 Wait's Ac. & Def., 230, 232, 286.

(On rehearing.) There was absolutely no liability against the defendant in the court below involved in the allegations of fact set up in the first cause of action. That cause of action is the alleged breach of one expressed covenant of the lease, and plaintiff did not rely upon any other covenant. It is a duty in pleading to plead, in the language of the lease or its substance, the particular conditions by the breach of which the ·damage is claimed. (R. S., Sec. 2447; Whittaker's Ann. Code of O., Sec. 5060 and note "contracts;" Boone on Code Pl., Sec. 26 and citations; Bliss on Code Pl., Sec. 245a.) Implied covenants are controlled and restrained within the limits of express covenants. (2 Pars. on Cont., 7th Ed., 646.) Express covenants are to be more strictly construed than implied. (Gear L. & T., 82.) The words "Expiration of the term" relate to the period fixed for its termination (Gear L. & T., Secs. 23, 28.) Expiration of the lease

means the end of the period during which it was to oper-
ate by the original intention of the parties.   In constru-
ing a covenant the tenant's liability must not be extended
beyond the reasonable meaning of the terms employed.
(4 Wait's Ac. & Def., 242 and citations.   Reed v. Snow-
hill, 51 N. J. L., 162.)   A covenant to lease in good
repair can not be broken until the end of the term.
(4 Wait's Ac. & Def., 242; Payne v. James, 7 So., 457.)
The contract of surrender absolutely abrogated and can-
celed the contract of lease.   It was the substitution of a
new contract in place of the old.

*W. R. Stoll*, for defendant in error.

Plaintiff below did not agree to release defendant from
damages committed upon the ranch, nor from the viola-
tion of her covenants contained in the lease.   When the
place was surrendered the tenant was liable to the land-
lord for all damages committed, which resulted either
from her duties as lessee or from the violation of the
terms of the lease.   The relation of landlord and tenant
was terminated, it is true, but only for the future.   The
tenant would not be liable for future rent, but she would
be liable for any rent past due, and for waste committed
while she was in possession.   When a lease is surren-
dered, all past obligations are not annulled; and whether
there is a liability on behalf of either or both parties as to
duties and obligations arising while the lease was in operation,
must be determined by the nature of those obliga-
tions which have been in existence in the past.   The one
hundred dollars was the agreed price for the privilege
granted the lessee of no longer being bound for the fol-
lowing year.

A landlord may release a tenant, but to do so, he must
do it by virtue of either an instrument in writing, which
by its terms does release the tenant from damages, or of
the fact that, by some act or deed, he has waived the
right to insist upon damages, or of the fact that in conse-
quence of some principle of law, he is estopped from

claiming damages, none of which exist or were pleaded in this case.

It is a rule of law in agency that if one receives the benefits of the agency, whether authorized or not, the one so receiving the benefits is liable and is estopped from saying that the relation of principal and agent did not exist. The testimony clearly established the fact of agency, and that the lease was made for the defendant below.

The lease was not required to be under seal. Where an instrument is not required to be under seal, the affixing of a seal is superfluous, and the instrument is to be considered as if no seal had been used. (Mechem on Agency, 702; Worrall v. Munn., 5 N. Y., 227; Lawrence v. Taylor, 5 Hill, 107; Evans v. Wells, 27 Wend., 323; Stowell v. Eldred, 39 Wis., 614.)

Authority to execute, for another, a written instrument, not requiring a seal, need not be in writing; and to hold one liable in addition to the signers does not contravene the statute of frauds. (Mechem Agency; 701; Briggs v. Partridge, 64 N. Y., 357; Barcherling v. Katz, 37 N. J., Eq., 150.)

(On rehearing.) A lease expires not merely by lapse of time but also by a surrender of the same. (Wood's L. & T., Chs. 42, 43; 12 Ency. L., 658–759; Taylor L. & T., Sec. 507.) Nothing discharges the covenants of a lease but performance or release; and in both instances the discharge must be pleaded. (Thomas v. Cox, 6 Mo., 506; Kemble Coal & I. Co. v. Scott, 90 Pa. St., 332.)

CONAWAY, JUSTICE.

This action was brought by defendant in error as plaintiff in the district court, to recover damages for a violation of the conditions of a lease of certain property of defendant in error known as the Rugg ranch, with its appurtenances, located on Bear Creek, Laramie County, Wyoming; and to recover one hundred dollars for accepting by agreement a surrender of the lease before the expiration of its

term.    Defendant in error had verdict and judgment for
$686.16, and the plaintiff in error made a motion for a
new trial, which was overruled; and now, by her petition
in error, brings the cause to this court for review.

The Rugg ranch consisted of four hundred acres called
meadow land, belonging to defendant in error, about half
of which was actually mowed for hay, the land laying
along Bear Creek; and several sections of government
land adjoining on each side, which was enclosed for pas-
ture, and known as the north and south pastures.

The lease is dated June 27, 1892, and purports to be
for the term of two years from date.    It, however, con-
tains a provision that possession should be given to the
lessor on May 1, 1894.    Under this provision defendant
in error claimed that the first year of the term expired on
May 1, 1893, and this claim does not seem to have been
objected to.

The lease names Charles F. Rugg as party of the first
part, and Daniel Marshall and Frank C. Marshall as
parties of the second part.    The first overture for the sur-
render of the lease comes from Frank C. Marshall, in a
letter dated March 27, 1893, to defendant in error, who
was then in Vermont.    The correspondence thus begun
resulted in the surrender of the lease upon an agreed con-
sideration of one hundred dollars to be paid to defendant
in error.    He took possession of the ranch under this
agreement on June 2, 1893.    A check for the hundred
dollars was sent to him by Frank C. Marshall.    He
declined to receive it because there was written upon it a
receipt in full of all demands.    His reason for refusing to
accept the check on this condition of receipting in full for
all demands was that he thought he was entitled to further
compensation because the ranch was not in as good condi-
tion when possession of it was restored to him as when he
gave possession under the lease.    The portion of the lease
under which he makes this claim is in the following words:
" Said lessees further agree to turn over to said lessor all
of said property at the expiration of this lease in as good

order and condition as when entered into by them." The letter of Frank C. Marshall to defendant in error already referred to, closes as follows: "You will find the place in good shape, and there will be no stock there after the first of April." Then follow two letters from defendant in error in Vermont to Frank C. Marshall, in response to which he writes from Longmont, Colo., under date of April 28, 1893. This letter contains a definite proposition for the surrender of the lease. The material portion is as follows: "Don't be alarmed about your place being neglected, as when you get it back you will find everything in good condition. There are no stock there at all at present, or has been since the first of April. Your horses, cows, and calves are over at Horse Creek, all in good shape. I will give you one hundred dollars to release me from further care of the place. I won't be able to send you the $250 till about the middle of May, as I am very hard up at present for ready money, and money is awfully tight at present at the banks. However, I will take care of you all right at that time barring accidents. If my proposition is satisfactory, let me hear from you."

The reply from Mr. Rugg, under date of May 4th, is the following: "Your letter of the 28th ult. received. I will accept your proposition if you send me $250, so that I get it by May 15th. Shall want to start next day to get there by June 1. I need the money to get home with and the other hundred June 1 when I receive the place. Everything is to be in good shape, no stock to be put in the pastures, and the meadow to be irrigated this month."

The next and final letter of the correspondence is signed by Mrs. Frank C. Marshall under date of May 12, 1893, and is in these words: "Mr. Marshall is and has been for some time quite ill, and unable to attend to business. At his request I answer your favor of May 4th. You can make a sight draft on him through Farmers Nat. Bank, Longmont, for $250. Write him on your arrival at Bear Creek telling him how you find everything." De-

fendant in error arrived at Bear Creek on June 1, and took possession of his ranch on June 2, 1893. The grass in the pastures was thoroughly consumed, the meadow in some portions badly tramped up, and no irrigation had been done. These elements of damage constitute the first cause of action of defendant in error, as stated in his amended petition. On the trial he was confined to the trampling of the meadow by horses and the failure to irrigate, in his proof of damages under this cause of action. If this be error, it is to his prejudice, but he is not complaining. A second cause of action is the $100 to be paid on surrender of the lease. Plaintiff in error interposed a motion in the trial court that defendant in error be required to elect on which cause of action he would proceed, the damage to the ranch, or the hundred dollars for agreeing to the surrender of the lease. The trial court overruled this motion and this is assigned as error. The position is that the agreement of surrender abrogated the lease,— in the expressive language of the brief of counsel, wiped it out. We are of the opinion that this motion was properly overruled. The surrender of the lease terminated the relation of landlord and tenant between the parties. It did not terminate the relation of debtor and creditor on account of liabilities already incurred at the time the agreed surrender of the lease was carried into effect by the delivery of possession of the premises. Defendant in error brought this action on the theory that Daniel and Frank C. Marshall in leasing the Rugg ranch acted as agents of plaintiff in error and leased it for her. It is necessary to state the evidence bearing upon this question of agency quite fully in order to determine whether it is sufficient to sustain the verdict against plaintiff in error as the unnamed principal for whom the lease was made; as well as to present in an intelligible manner, the instructions of the court upon the question of agency. At the time the lease was made plaintiff in error was the owner of a ranch and between nine hundred and one thousand head of cattle. We use the word cattle as it is used in the pleadings and

in the testimony to indicate animals of the bovine family
as distinguished from other domestic quadrupeds. This
ranch was on Little Horse Creek, Laramie County, Wyo.,
and the cattle were kept there and in that vicinity. Plain-
tiff in error in her testimony makes the following state-
ments: "I carried on on said land what is commonly
known as the cattle or ranching business. I don't know
the extent in acres of my ranch, or the number of cattle
thereon. My agents who conducted said ranch and the
business thereon can give the necessary information about
it. My sons, Daniel and Frank, conducted the business
as managers under wages like any other men. I did not
personally conduct or superintend in any way the busi-
ness there carried on. I never put any limitations upon
their manner of conducting the said business. I trusted
to their discretion to a partial extent as to their manner
of conducting said business. I never gave them any
written authority upon the subject. They did not report
to me from time to time. I know that my said sons are
on the said ranch and carrying on the business for me.
All that they do or ever have done in or about that
ranch and business is my business and is carried on for
me, except that they have no authority from me." On
cross-examination she explains that her husband, F. I.
Marshall, and O. W. Marshall, another son, are her duly
authorized agents appointed by power of attorney, and
that her business in Wyoming was "conducted" by
them, and Daniel and Frank "derived their employment"
from them. This testimony is undisputed, and no doubt
is a truthful statement of plaintiff in error, in her own
language, of the situation. She does not repudiate any-
thing that was done for her by her sons, Daniel and Frank.
The principal question is this: Is there sufficient evidence
to support a finding by the jury that these sons made the
lease for her? Daniel and Frank C. Marshall testify
positively that they made the lease of the Rugg ranch for
themselves and not for plaintiff in error. Frank C. testi-
fies that at the time of leasing the place he intended to go

to Texas and buy cattle, but did not do so because he had
not money enough.    Daniel resided upon the Marshall
ranch at a distance from the Rugg ranch variously esti-
mated by the witnesses at from seven to ten miles.    He
had actual charge of the Marshall properties.    Frank C.
resided at Longmont, Colo.    Daniel testified that after
the lease was executed a portion of the cattle of plaintiff
in error were turned upon the Rugg place.    It appears
that they remained there during the following winter.    In
December, 1892, Daniel Marshall sold the cattle of plain-
tiff in error to Ora Haley.    In January, 1893, he removed
from Wyoming, and appears in the business no more.    A
few weeks subsequent to this sale by Daniel Marshall,
Frank C. Marshall notified Ora Haley that the cattle
belonged to plaintiff in error, and that he represented her,
and that Mr. Haley's dealing should be with him and not
with Dan from that time on, that he would attend to the
delivery of the cattle; and any balances should be paid to
him.    Daniel had not informed Haley to whom the cattle
belonged.    Mr. Haley testifies that when he purchased
the cattle from Daniel Marshall there was an enumeration
of the pastures and places to which the cattle should have
access, and those places were the Marshall ranch and the
Dater pasture and the Rugg pasture.    He says: "They
were to remain until the grass was sufficient in the spring
time to move them, trail them, and my convenience sug-
gested."    Daniel Marshall is not questioned and does not
say anything upon this point, and this testimony of Mr.
Haley is nowhere contradicted, or its truthfulness ques-
tioned.

There is no direct testimony to show that in making the
lease Daniel and Frank C. Marshall acted as agents for
plaintiff in error.    The testimony of Mr. Rugg is to the
effect that at the time the lease was signed he knew that
plaintiff in error was the owner of the cattle which Daniel
and Frank C. Marshall were handling in Wyoming.    On
cross-examination he is asked how he knew this, and he
answers:    "Because Frank Marshall told me."    He is

also asked on his cross-examination this question: "Whom did you consider that Frank and Dan Marshall were acting for at that time?" This apparently means, from the connection where it occurs, the time when he consulted his attorney. He answers: "I supposed for the owner." Frank C. Marshall delivered the cattle to Ora Haley on the 1st of April, 1893. He says he took his departure four or five days after — maybe as late as the 7th — and was not back again until after Rugg took possession of the ranch. He left Elmer Peck at the Marshall ranch as foreman in charge of the Marshall business. Mr. Haley also took his departure immediately after receiving the cattle, and left John B. Bowie as foreman in charge of his property.

Frank C. Marshall testifies as follows: "When I delivered the cattle to Mr. Haley I gave him positive instructions he must move them, and he did move them away and took them off the place altogether on delivery. Some time after I got a letter from Rugg that Mr. Haley had put some cattle in the Rugg pasture." On cross-examination, this question is propounded to him:

"Q. Your instructions were, however, to Mr. Haley that they (the cattle) were not to be turned on the Rugg place?"

"A. Yes, especially not on the meadows."

Mr. Haley testifies that the cattle were not moved until some time in May, but this evidently refers to the time when they were gathered, put on the trail, and taken out of the country. His testimony is to the effect that under his contract of purchase with Daniel Marshall he had a right to the use of the Marshall, Dater, and Rugg pastures, until such removal. As to moving the cattle from one pasture to another, he evidently left that to his foreman, and knows nothing about it himself.

Mr. Peck testifies that the Marshall cattle which were on the Rugg ranch at the time they were delivered to Mr. Haley on the first of April were removed the next day, and there is no evidence to the contrary. Mr. Bowie

testifies as follows: ''I kept about six hundred head upon the Rugg place from about the 20th of April until the 20th of May; on the 10th of May I put in three hundred and seventy-five in addition to the six hundred head already mentioned and kept them there until the 20th of May.'' He further says: ''The feed was very good at the time I turned in. At the time I left there was scarcely any.'' There is no evidence conflicting with this. He also testifies in these words: ''Frank C. Marshall gave me permission to pasture the cattle in any of fields except the meadows of the Rugg ranch as long as I needed the same.''

This is probably a sufficient synopsis of the testimony. There was a verdict against plaintiff in error, a motion for a new trial which was overruled, and judgment on the verdict. Objection was made to the introduction of the lease in evidence, because it is an instrument under seal and no authority to execute it was given by any instrument under seal. But it is a lease for a term not exceeding three years, and which need not be under seal. (Rev. Stat. Sec. 1 and 24.) Authority to execute such contracts may be conferred by parol. (Mechem on Agency, Secs. 91 and 95.) Another objection to the lease as evidence is that it is not signed by the plaintiff in error. Our statute of frauds and perjuries provides that every agreement for the lease of real estate for more than one year shall be void unless such agreement or some note or memorandum thereof shall be in writing and subscribed by the party to be charged therewith. (Rev. Stat., Sec. 1249.) If this were an action to enforce this lease as an executory contract, this objection might be available. But it can not avail to protect the lessee from an action for damages for waste committed during her occupation of the premises. Besides, the provisions of the lease bearing upon this question are in substance repeated in the correspondence constituting the contract for the surrender of the lease.

A number of exceptions to the giving and refusal to give instructions are preserved. We have examined them,

and are of the opinion that the law of the case was fairly presented, and that the instructions are fully as favorable to plaintiff in error as the law and the evidence warrants.

We now reach the principal question in the case : "Is the evidence sufficient to sustain the verdict and judgment?"

There was a motion for a new trail in the trial court in this case, one ground of which motion was, "That said verdict is not sustained by sufficient evidence." The motion was overruled.

The supreme court of the United States has long held that a motion for a new trial is addressed to the discretion of the trial court, and the action of the trial court thereon can not be assigned for error. (R'y Co. v. Heck, 12 Otto, 120.) This rule has never prevailed in this jurisdiction. Rule 13 of this court provides for a review by this court of the overruling of a motion for a new trial by the trial court. And the rule of the supreme court of the United States has been here held to be subject to the qualification that if it is clear from the record that the verdict is contrary to law, and there is no evidence to sustain it, it is the duty of the court to set it aside. (Edwards v. O'Brien, 2 Wyo., 493.)

One statutory ground for vacating a verdict and granting a new trial is that the verdict is not sustained by sufficient evidence. Rev. Stat. Wyo., Sec. 2652, subdivision six.

The evidence disclosed by the record before us, and which tends to sustain the verdict and judgment against the plaintiff in error as the unnamed principal for whom the lease in question was procured, may be stated, briefly, as follows : Several hundred cattle belonging to plaintiff in error were placed upon the Rugg ranch some time in the latter part of 1893. They were delivered there to Ora Haley on April 1, and removed on April 2. Ora Haley testifies that by his contract of purchase the cattle were to remain upon this and two other ranches until the grass was sufficient in the spring time to trail them.

Several hundred of the cattle were returned to the ranch after being removed on April 2, and were kept there until May 20, and they very thoroughly consumed the feed in the pastures. When these cattle were finally removed the Marshalls had no further use for the ranch. Daniel and Frank C. Marshall, the nominal lessees, put no stock of their own upon the ranch, and it appears that they had not cattle to stock the ranch, and had not money enough to buy cattle for that purpose. The ranch was used mainly for the benefit of the plaintiff in error. Defendant in error testifies that two of the checks paid him for rent of the ranch were signed by F. J. Marshall, an agent of plaintiff in error duly appointed by power of attorney. On cross-examination he says he is not positive of this, but thinks that it is true. That such was the fact is not denied by any evidence, although Daniel and Frank C. Marshall both testified. Neither does Daniel Marshall deny that by the contract made by him for the sale of the cattle Ora Haley, the purchaser, was to have the use of the ranch until grass came the following spring. Neither does Daniel or Frank Marshall explain why plaintiff in error should have the use of the Rugg ranch, which they leased and paid for, for their own use. Frank C. Marshall testifies positively that plaintiff in error never paid any of the rent. The testimony on behalf of plaintiff in error probably impressed the jury as more remarkable for what it failed to show than for what it actually stated.

It is not the business of a court to weigh the evidence and decide which party has the preponderance when the matter has been properly submitted to a jury. The rule in this regard has been repeatedly stated from the bench, in language not always the same, but perhaps intended to convey the same idea. In Bank v. Dayton, 1 Wyo., 336, the rule is stated in these words : "The court will not set aside a verdict and grant a new trial upon the sole ground that the verdict is not sustained by sufficient evidence, unless it is manifest that the jury acted in a total disregard of the evidence, and acted against the great weight of the

evidence to such an extent as to show that the verdict was the result of improper motives.''

In Fein v. Tonn, 2 Wyo., 113, the rule as laid down in Hilliard Flume & Lumber Co. v. Wood, 1 Wyo., 411, is followed and approved, in these words: ''Where an appellate court is empowered to revise upon the facts, it can never reverse on them simply because upon the evidence, as submitted to it, it would have arrived at a different conclusion ; and can only reverse when the verdict, or if the trial was by the court without a jury, the findings were so clearly against the weight of evidence that no mind of fair intelligence and faithfully exercised can be reasonably supposed to have arrived at the result which is complained of; as to state the rule in a different form, but as conveying the same idea, tends to an opposite conclusion; which is to say, reducing the rule to a brevity, where the evidence is all one way and the verdict or findings another.'' The statement of the rule is again approved in the case of Garbanati v. Hinton, 2 Wyo., 271.

In case of Ketchum v. Davis, 3 Wyo., 164, the court says: ''This court has time and again decided that it will not reverse the decision of the trial court when the evidence is conflicting, and where there is evidence tending to sustain the finding of the court, unless the findings of the court are so clearly against the weight of the evidence as to make it manifest that the evidence was entirely disregarded, or that the court was influenced by passion or prejudice, or acted from some improper motive.'' See also Boburg v. Prahl, 3 Wyo., 325. The same rule applies with at least equal reason to the findings or verdict of a jury. We can not say that the verdict in this cause is not supported by any evidence, or that it is so clearly against the weight of the evidence as to make it manifest that the evidence was entirely disregarded, or was the result of passion, prejudice, or improper motive. The evidence tending to support the verdict and judgment, as recited above, is sufficient, standing alone, to raise a strong presumption of the liability of plaintiff in

error as the unnamed principal for whom the property was leased. It is not for the court to weigh this evidence against the evidence tending to the contrary conclusion. The jury has done this. They had the witnesses before them. The trial court refused a new trial. That court had the advantage of seeing and hearing the witnesses, and observing their manner of testifying. Neither the jury nor the trial court was bound to believe testimony to the effect that the lease, of which plaintiff in error had the benefit, was not made for her, or that she did not pay for benefits received under the lease.

*The judgment of the district court is affirmed.*

GROESBECK, C. J., and POTTER, J., concur.

---

ON REHEARING.

CONAWAY, JUSTICE.

It will be remembered that by the terms of the lease upon which this action was brought the lessees agreed to yield possession on the first day of May, 1894.

Possession was actually yielded to defendant in error, the lessor by subsequent contract specifying July 1, 1893, as the date when he should resume possession, and he entered into possession on July 2, 1893, under this contract. The lease also contains the following provision:

" Said lessees further agree to turn over to said lessor all of said property at the expiration of this lease in as good order and condition as when entered into by them." It is contended that the phrase " expiration of this lease " means the expiration of the term specified in the lease occurring on May 1, 1894; and that the expiration of the lease occurring at an earlier date by subsequent contract does not come within the meaning of the words "at the expiration of this lease," as the same appear in the lease. It would seem that the words " expiration of this lease " are too plain to admit of construction, and that it is

hardly within the province of judicial construction, to say that the words mean on the first day of May, 1894; and that such construction would be, in effect, to interpolate a clause in the covenant to return the property in as good condition as when leased, making it read as follows: " Said lessees further agree to turn over to said lessor all of said property at the expiration of this lease in as good order and condition as when entered into by them if such expiration of the lease do not occur until the first day of May, 1894."

Plaintiff in error cites the case of Reed v. Snowhill, 51 N. J. L., 162, and 49 N. J. L., 292, as sustaining her contention on this point. It is somewhat remarkable that this is the only case really analagous to the case at bar which has been unearthed by the diligent research of counsel on both sides. This circumstance, as well as the eminence of the court rendering the decision, entitles the case to careful consideration at the expense of some time and space, especially as the case is strongly urged by counsel for plaintiff in error as conclusive in her favor upon the point under consideration.

The case of Reed v. Snowhill was an action upon a lease of certain property for a year ending October 1, 1884. "The lease contained a covenant that the tenant, on the expiration of the said lease, would deliver up the possession of the said premises to the lessors or their legal representatives in as good repair as the same were at the commencement of the lease, reasonable wear and tear and damage by fire, war, and trespass only excepted." (49 N. J. L., 292.)

On the 29th of August, 1884, the parties concluded an agreement in writing, indorsed on the lease, for the surrender of the premises, in these words: "August 29, 1884. In consideration of David R. Reed, the within named lessee, relinquishing possession of the within described premises to said lessors, on the first day of September, A. D. eighteen hundred and eighty-four, the said lessors do hereby agree to release the said Reed from pay-

ment, on the within lease, of twenty and eighty-five hundredths dollars, leaving a balance due on said lease by said Reed of forty-one and sixty-five hundredths dollars. The said lessors, however, to allow said Reed to retain possession and use of the room in said property, in which he shall store his goods, for such reasonable time as will permit him to secure other apartments.    Daniel Snowhill." (49 N. J. L., 292.)

This agreement was executed by the payment of the balance of the rent and the surrender of the premises.

The supreme court of errors and appeals says: "With this ending of the estate or interest in the lands goes also all covenants in the lease which had not matured and become actionable during the continuance of the estate."

But the covenant in a lease to restore possession of the leased premises in good condition at the expiration of the lease is held, by all authorities, in case of its violation, to be actionable.    And the New Jersey Court does not hold otherwise.    It is considered as having matured and become actionable during the continuance of the estate.    The right of action accrues, if at all, at the same time with the expiration of the lease and not afterward.

But in the case of Reed v. Snowhill the court says: "The words 'on the expiration of said lease,' in the covenant, construed as the parties understood them at the time the lease was executed, did not contemplate any other end than the full term for keeping the covenant."

There is some reason for saying this in that case which does not obtain in the case at bar.    The lessors made their demand for repairs soon after the surrender of the lease, but did not bring their action till after the expiration of the original term.    They allowed the lessee all this time in which to make the repairs.    But was it necessary for them to do so ?    Was there sufficient reason for holding that when the parties said that at the expiration of said lease, they meant the first day of October, 1884 ?    With all due respect to the eminent court which announced the opinion in the case, I must regard this view as extremely doubt-

ful. If the tenant had committed a large amount of waste during the first half of the term, and the premises had then been taken for public use by condemnation proceedings, and their value in their damaged condition paid in such proceedings, it would have worked the expiration of the lease. Would the lessors have been without remedy for their loss? And in case of the shortening of the term of the lease by the parties by subsequent contract, and the consequent expiration of the lease at an earlier date, does it follow that the lessor is without remedy for damage done or permitted to the leased premises by the lessee during his tenancy? With all due respect I must say that this also seems extremely doubtful.

Counsel for plaintiff in error says in a final brief: "The expression 'at the expiration of this lease' has been judicially defined by an appellate court of repute." And refers to Reed v. Snowhill, supra. And further: "No case has been cited — not one — which would in the least vary or antagonize the definition of the expression laid down in Reed v. Snowhill, et al. The court must assume that the contracting parties used the expression they did use advisedly, and that they meant just what they said, and the words used having a fixed and determined meaning, no other can be given to them."

The trouble with this is that in Snowhill v. Reed, the court did not attempt to define any words, and did not adhere to the meaning of the language as fixed by definitions of standard authors; but simply held that when the parties said one thing they meant another. The language is not obscure, or ambiguous, or even technical. Bouvier defines expiration in these words: "Cessation; end; as the expiration of a lease, of a contract or statute."

There are a number of ways in which a lease may be as effectually ended as by the lapse of its term : as by merger, by condemnation proceedings, by certain wrongful acts of the tenant, by the death of either landlord or tenant, in case of a tenancy at will, etc. And when the tenancy so terminates before the expiration of the term of

the lease, the lease is as effectually at an end as if it had expired by the lapse of its term. No rights or liabilities can afterwards accrue under it. But this does not affect rights or liabilities already mature. The covenant in the lease sued on in the case at bar is very broad — sufficiently so to include in its scope actions for damages in the nature of waste, and other actionable damages to the leased property, done or permitted by plaintiff in error during her tenancy, and not repaired at the time of the expiration of the lease, at which time any liability for its breach accrues and matures.

The opinion of the court of errors and appeals in the case of Reed v. Snowhill does not commend itself to favorable consideration. It was rendered over seven years ago, but does not seem to have been either followed or overruled, but rather ignored

The opinion of the supreme court (an intermediate appellate court), in the same case, seems to be founded in the better reason. We make the following extract : ''The time for performance was the time of expiration of the lease. The lease expired by virtue of the surrender as effectually as it would have expired by the efflux of time without a surrender.'' The court of errors and appeals does not attempt to deny this. That court simply holds that when the parties used the words '' expiration of the said lease,'' they did not mean what they said. We can not consent to follow even that able court in making a contract of lease for parties different from the contract they make for themselves.

The case of Reed v. Snowhill, however, is distinguishable from the case at bar in some of its features. As already mentioned, suit was not brought in that case until after the expiration of the original term of the lease. Nothing was said about the condition of the premises in the contract of surrender. The damage to the property was the destruction of some counters and shelving and the painting of a sign in large letters on the front of the building ; all of which could be repaired. As repair was

not demanded when possession was taken, it might be considered as waived. In the case at bar the good condition of the premises was particularly mentioned, and stipulated for in the agreement for surrender, showing affirmatively that no waiver of the covenant of the lease was intended. The proposition of Frank C. Marshall was terse and to the point. "I will give you $100 to release me from further care of the place." This is not asking for a waiver of the covenant to return the property in good condition. Besides, it is accompanied with an assurance that the property shall be returned in good condition.

The damage in the case at bar for which recovery was had was such that it could not be repaired, and a demand that it should be would have been futile. Nothing could be done after the first of July to avoid the damage to the hay crop that year by the failure to irrigate up to that time. Nothing could be done to prevent diminution of the hay crop for that year, and probably for several succeeding years, by the trampling of the meadows. As it would have been useless to make such demand no presumption can arise from its not being made. It seems best, however, not to place the refusal to follow the case of Reed v. Snowhill solely on these distinctions, lest it be inferred that, in a parallel case, that case would be followed.

The decision of the case at bar rendered on the original hearing will not be changed.

GROESBECK, C. J., and POTTER, J., concur.