[No. 21917. Department One. June 13, 1929.]

Jos. Schuss, *as Receiver, Appellant,* v. J. D. Rice *et al.,* *Respondents.*[1]

*Gus L. Thacker* and *Don G. Abel,* for appellant.
*Rice & Stinson,* for respondent.

Tolman, J. — Appellant, as receiver of Central Motors, Inc., by this action, seeks the recovery of damages said to have been suffered by the corporation which he represents by reason of an alleged wrongful and forcible ouster and dispossession from leased premises which it had theretofore lawfully occupied as the tenant of the respondent. The case was tried below to the court, sitting without a jury, resulting in

[1]Reported in 278 Pac. 428.

a finding by the trial court upon what we consider the pivotal question of fact against appellant's contentions, and a judgment of dismissal, from which this appeal is taken.

The complaint alleges:

"That, heretofore, and on the 14th day of May, 1927, defendant J. D. Rice, entered in and upon the premises and forcibly, unlawfully and maliciously, and without any process of court and without warrant of law, evicted the Central Motors, Inc., a corporation, and all of its officers, agents and employees, against their consent, by closing the doors of said business and placing padlocks thereon, forcing the said officers, agents and employees of said Central Motors, Inc., a corporation, to remove from said building, and defendant retained the keys thereof and refused access to the said place of business of the said Central Motors, Inc., and ever since said time, has so refused."

It is admitted that the lease provides:

"It is expressly agreed that if any rent shall be due and unpaid, or if default be made in any of the covenants herein contained and required to be kept and performed by the lessees, then it shall be lawful for the lessors to re-enter said premises and remove all persons therefrom, the lease thereupon being terminated without recourse by the lessees on the lessors, . . ."

And the trial court, upon this subject, found:

"That, on the 14th day of May, 1927, J. D. Rice, defendant, went to the place of business of the Central Motors, Inc., and again insisted upon the payment of the back rents, and, in the alternative, that they were unable to pay, that the company turn over to him the building and its contents. After some parley and consulting with an attorney, the company delivered the keys to J. D. Rice, delivering the building and what remained of the stock to him, no force, violence, fraud or duress, undue influence or deception was used by J. D. Rice in obtaining possession of the property, and the same was turned over voluntarily, though perhaps

with some reluctance as to whether that was the proper move."

To support the allegations of the complaint, the two officers of the corporation testified, in substance, that the rent was several months in arrears; that respondent was pressing for payment or security; that they were unable to pay, and that, finally, on the day in question, respondent threatened to lock the place up unless his rent was paid; that they protested that he could not take possession or oust them without legal process. After attempting to get advice from their attorney, and after talking with respondent's attorney, they still protesting orally, respondent procured padlocks and started to lock the doors. Then, according to the witness Simmons, who was the manager, he called to the employees in the building, and, in their presence and in the presence of respondent, said:

"A. And I told them he was going to lock the place up and he didn't have any court order to do it, and we were not turning the place over to him voluntarily; he was taking it, and we were going to start some action against him. And I believe he got somebody to help him put the padlocks on. He told the boys he was taking possession of the place, that he was in possession there now; and he got somebody to help him put the padlocks on I believe and he padlocked the doors,— the back door, the one that goes into the basement, and the back door that comes out of the shop and the front door, the driveway door; and I don't remember if he padlocked the front door into the show room, or what he done with that, but I think he put a padlock on that too."

On cross-examination, this witness further testified:

"A. He went over and bought the padlocks and brought them back and put them on. I don't know whether he got anybody to help him; he was trying to get someone to help him lock it up, and I don't remember whether he got anybody to help him lock it up or

not; it seems like someone helped him, but neither Smith nor I helped him. Q. But your hired help was there; some of them may have helped him; you don't deny but what they helped him in closing it up? A. I don't remember whether they helped him or not. Q. Did you remain there until it was closed? A. We remained there until he had the big doors closed and we left. Q. That is the big door on Market? A. The front door into the driveway on Market, and the front door into the show room. Q. There are two doors on Market street? A. Yes, there was one of the doors he didn't have locked yet when we left, I don't remember which one.''

None of appellant's other witnesses went further in support of the allegations of the complaint, and most of them lacked considerable of going so far.

Upon the other hand, the respondent testified clearly that, upon his making demand for the rent for the building, Simmons, the manager, protested at first, but finally surrendered the keys to him voluntarily, and that he thereupon took possession and locked the building. Respondent, in this testimony, is clearly and fully corroborated and supported by the testimony of one of the employees under Mr. Simmons, who was apparently a wholly disinterested witness, and if he and respondent are to be believed, there was clearly a voluntary surrender of the keys, and with them a voluntary surrender of the possession of the leased premises.

The case having been tried to the court, it is not a question of there being any substantial evidence of forcible dispossession, but, rather, to reverse the judgment, we must say that the trial court, who heard and saw the witnesses, found contrary to the weight of the evidence.

In view of the unsatisfactory nature of appellant's evidence already quoted, in that it indicates that

the tenant relied upon its protest, and then walked out without any compulsion, we cannot hold that the evidence preponderates against the findings of the trial court.

This finding of a voluntary surrender, which we have found to be supported by the evidence, under our well-recognized rule, renders it unnecessary to review the authorities cited and relied upon; no authority being cited holding that a tenant may not voluntarily surrender possession on the demand of the landlord, and none holding that a mere oral protest lessens the legal effect of a peaceable and voluntary surrender of the keys and possession thereafter.

Had the tenant stood upon its protest and gone no further, the landlord could only have proceeded by legal process or by taking the law into his own hands and forcibly entering into possession. But by the act of surrendering the keys, the force of the protest was overcome, and that act permitted the landlord to peaceably accept the keys and the possession.

The judgment appealed from is therefore affirmed.

FULLERTON, HOLCOMB, BEALS, and MAIN, JJ., concur.