[No. 28729. Department Two. August 7, 1942.]

YAKIMA VALLEY MOTORS, INC., *Appellant,* v. WEBB TRACTOR & EQUIPMENT COMPANY, *Respondent.*[1]

[1]Reported in 128 P. (2d) 507.

*J. P. Tonkoff,* for appellant.

*Roberts, Swanson & Tunstall,* for respondent.

BLAKE, J.—Defendant was tenant under a lease terminating June 9, 1941, of premises owned by plaintiff. After the lease terminated, plaintiff brought this action to recover the last two months' rent and for damages for breach of the lessee's covenant to repair. Defendant counterclaimed for damages for wrongful eviction. The cause was tried to the court, which, upon findings made, entered judgment dismissing plaintiff's complaint and denying defendant's counterclaim. Plaintiff appeals.

The appeal presents three questions: (1) whether respondent was absolved of liability for rent for the last two months of the term; (2) whether it breached its covenant of repair; and (3) whether attorney's fees should be allowed to the successful party.

 *First.* The term demised was from June 1, 1935, to June 9, 1941. There was a building on the property, in which respondent conducted its business of selling and repairing heavy farm equipment. Some months prior to the expiration of the lease, respondent acquired property upon which it commenced the construction of a building to which, upon completion, it intended to move. In February, 1941, respondent notified appellant that it expected to vacate the leased

premises on March 10th. Its own building was not ready, however, at that time. When it became ready, some time around April 10th, respondent began to move. At the same time, appellant entered upon the premises for the purpose of making improvements designed for its own occupancy of the property.

During the several days that respondent was moving (and subsequently), appellant continued to make repairs and improvements. Respondent, during moving operations, made no protest or complaint of appellant's actions, nor did appellant, so far as we can ascertain from the record, make any demand for the rent due April 10th and May 10th prior to bringing this action. On the other hand, after respondent had moved out, appellant accepted the keys to the premises, completed the repairs and improvements to the building, moved in, and was ready for business on May 25th.

Under these facts, we think it is clear that there was a surrender of the leasehold by respondent and an acceptance by appellant. 32 Am. Jur., Landlord and Tenant, §§ 901, 906; *Hart v. Pratt,* 19 Wash. 560, 53 Pac. 711; *Schuss v. Rice,* 152 Wash. 638, 278 Pac. 428. Respondent was, therefore, relieved of the obligation to pay rent subsequently falling due. 32 Am. Jur., Landlord and Tenant, § 914; *Metropolitan Nat. Bank v. Hutchinson Realty Co.,* 157 Wash. 522, 289 Pac. 56.

█ *Second.* The surrender and acceptance, however, did not relieve respondent of its obligations under its covenant to repair. *Marshall v. Rugg,* 6 Wyo. 270, 44 Pac. 700, 45 Pac. 486, 33 L. R. A. 679. That covenant reads as follows:

"It is understood and agreed that said premises has thereon a brick building which has heretofore been used in the hide and wool business, and in consideration of no monthly installments being required to be paid by the lessee until the 10th day of June, 1936, the lessee agrees that it will enter into the occupancy of

said premises on the 1st day of June, 1935, and will thereafter, and during the year 1935 expend not less than $1000.00 one thousand in cleaning up said premises and placing the same in a sanitary condition; and in remodeling and repairing the front and rear of said building to suit their needs and installing such new plumbing in the building as their needs may require, and in building a new floor in said building over such area as it may deem necessary for its business, and in redecorating the interior of said building, and making such other repairs and alterations to the interior of said building as it may deem necessary to properly carry on its business therein, all at its own cost and expense. The lessee further agrees that it will, from time to time during the life of this lease, at its own cost and expense, make such repairs to both the exterior and interior of said building, including the roof thereof, but excepting repairs to the walls of said building as may be necessary to maintain said building in as good condition as the same now is, *and in as good condition as the same may be placed in after the completion of said changes, alterations and repairs to be made thereto by the lessee as herein contemplated.*" (Italics ours.)

At the time respondent entered into possession, the premises were not only in a state of dilapidation, but also in a filthy condition because of rotten hides left by the preceding tenant. The building was not in a tenantable condition. It was a structure 50 x 140 feet, with a basement under the rear third. The floor over the basement was of wood construction, in a bad condition, and not adapted to the use of respondent's business. The remaining two thirds of the floor consisted of unreinforced concrete laid on the ground. It was badly cracked and crumbled. And, besides this, the roof leaked.

The respondent, without doubt, spent more than one thousand dollars in repairing and cleaning up the premises. Reinforced concrete was laid over "about twenty

per cent" of the old concrete at the front of the building. The rest of the old concrete floor was left "as is." The wood floor was covered with one-inch pine sheeting, and the underpinning was reinforced to sustain the weight of tractors and caterpillars ranging up to twenty-two tons. The roof was completely recovered with tar paper. During its occupancy, respondent made such repairs to the wood floor and the roof as became necessary.

When respondent vacated, the roof was again in a leaky condition—in such bad state that it could not have been repaired at a cost less than that of a new roof. The wood floor was badly "chewed up" from running tractors and caterpillars with wheels with cleats over it. And, for the same reason, the portion of the concrete floor relaid by respondent was badly cracked. To sum it up, respondent left the premises in an untenantable condition. Notwithstanding the trial court found against the appellant, we think the statements we have just made with respect to the condition of the roof and floor at the time respondent vacated the premises, are supported by a clear preponderance of the evidence. Indeed, respondent scarcely denies that such was the condition of the premises. Rather, it takes the position that the condition was due to ordinary wear and tear incident to the character of its business, for which it is not responsible under its covenant to repair. But this position is untenable under such a covenant to repair as we have before us. In this covenant, there is no exception as to ordinary wear and tear. The covenant is plain and absolute.

Where a lessee covenants to put and keep a building in repair, he is bound to keep it "wind and water tight." 32 Am. Jur. § 780. In other words, it is the obligation of the lessee, under such a covenant as

this, to keep the premises in the condition of repair not only that he found them, but also that he put them. *Arnold-Evans Co. v. Hardung,* 132 Wash. 426, 232 Pac. 290, 45 A. L. R. 9, see annotation pp. 19, 20; *Green v. Eden,* 2 N. Y. Sup. Ct. 582; *Lehmaier v. Jones,* 100 App. Div. 495, 91 N. Y. Supp. 687; *Devine v. Radford,* 59 Misc. Rep. 473, 110 N. Y. Supp. 982; *Feuerberg v. Polsky,* 180 N. Y. Supp. 103; *Ginsburg v. Jacobson,* 276 Mass. 108, 176 N. E. 918; *Goode v. Duke,* 131 Ore. 488, 283 Pac. 34.

While the premises were probably in as good condition as respondent had found them, they were not in the condition that it put them. To keep them in the condition it put them was an express part of the covenant of repair. In failing to so keep the premises, respondent breached the covenant, and is, therefore, liable in damages for the reasonable cost of putting them in that condition. *DeLano v. Tennent,* 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766—and this notwithstanding that such condition was not adapted to appellant's own occupancy. See *Appleton v. Marx,* 191 N. Y. 81, 83 N. E. 563, 14 Ann. Cas. 150, 16 L. R. A. (N. S.) 210.

The only evidence as to the cost of putting the roof in such condition is the amount paid by respondent when it re-covered the roof in the first instance: $241. With respect to the floor, it will be remembered that respondent relaid only twenty per cent of the concrete floor—leaving the rest "as is." Under the evidence, we are satisfied that respondent breached the covenant of repair in failing to leave that portion of the concrete floor in the condition it was put at the beginning of the term. Likewise, it breached the covenant in failing to leave the wood floor in such condition. There is evidence to the effect that it would have cost twenty cents a square foot to put either the concrete or the wood floor in that condition. The

area of the wood floor was approximately 2,333 square feet, and the area of the concrete floor which respondent was bound to repair was approximately 933 square feet. Under the evidence, therefore, appellant is entitled to recover $653.20 on account of repairs to the floor which, under the covenant, respondent was required to make.

■ *Third.* The lease provides:

"In the event of any action or suit arising out of or under the terms of this agreement, the successful party thereto shall be entitled to such attorneys' fees as shall be adjudged reasonable by the court."

The court is of the opinion that $350 is a reasonable attorney's fee to be allowed appellant.

The judgment is reversed, and the cause is remanded with directions to enter judgment for damages in favor of appellant in the amount of $894.20; and, in addition, for attorney's fees in the sum of $350.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.