SYSTEM TERMINAL CORPORATION, System Investment Corporation, Appellants (Defendants below),

and

B. M. Stewart (Defendant below),

v.

J. M. CORNELISON and Pearl Cornelison, Appellees (Plaintiffs below).

J. M. CORNELISON and Pearl Cornelison, Appellants (Plaintiffs below),

v.

SYSTEM TERMINAL CORPORATION, System Investment Corporation, Appellees (Defendants below),

and

B. M. Stewart (Defendant below).

Nos. 3003 and 3004.

Supreme Court of Wyoming.

Aug. 25, 1961.

Jones & Dumbrill, Newcastle, for System Terminal Corp., and another.

Halsey, Whitley, Hollaway & Liamos, Newcastle, for J. M. Cornelison and another.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The Cornelisons, husband and wife, owners of grazing land in Custer County, South Dakota, filed suit against the System corporations and B. M. Stewart, a principal stockholder, alleging plaintiffs' ownership of the land, a five-year lease to the defendants, their failure to yield up the premises in good order, overgrazing, and misuse of the land contrary to the covenants of the lease, claiming $9,119.16. Defendants admitted the lease but denied other allegations and counterclaimed for $3,000 because of plaintiffs' pasturing the land for several months during the term of the lease. The court found for plaintiffs in the sum of $2,709.04, but also found for the defendants on the counterclaim in the amount of $833.-34, rendering a judgment of $1,875.70 for plaintiffs. Both parties have appealed, plaintiffs because the counterclaim was allowed against them and defendants from the entire judgment. With certain minor exceptions to be mentioned hereafter, the facts are not in dispute.

On February 26, 1954, the plaintiffs executed a lease to System Terminal Corporation,[1] doing business as LAK Ranch, for a five-year period from September 1, 1954, until September 1, 1959, at $5,000 per year, defendants having previously entered into possession of the land by reason of a purchase of the interest of one Marshall, the former lessee. During May or June of 1954, buildings, corrals, and improvements on the leased land were knocked down and pushed in piles by defendants' bulldozer. Prior thereto, Ward, defendants' manager, had discussed the matter which Cornelison, but there is not unanimity as to the nature of the conversation. Ward testified that he asked Cornelison if he could remove two buildings, tear down the corral fence, and put in a good corral, and that Cornelison said all right. Cornelison testified that Ward said something about making a gate on the back of the barn and that when Ward said the chicken house was going to fall down he replied that if it was in the way it didn't amount to anything and to do whatever he wanted. He said these were the only two things they talked about.

The rentals were paid in 1954, 1955, and the first installment of 1956. About June of that year there were certain negotiations and correspondence between the parties about the possible termination of the lease by defendants. Thereafter, $2,500 in rental due on September 1, 1956, remained unpaid; and on November 15 plaintiffs brought 200 sheep, 23 cattle, and 4 horses on the place. Fawcett, an employee of plaintiffs' who had previously been with the sheep, commenced living on the premises at that time. The sheep were fed cake and hay and stayed in the neighborhood of the improvements on the ranch, while the cattle, kept two miles distant, were fed hay

1. System Investment Corporation and B. M. Stewart were the successors and assigns of System Terminal Corporation.

and were said to have eaten some brush and Russian thistle. It was conceded that both the sheep and cattle grazed some, and one witness said that the horses were all over the ranch.

█ Defendants in their appeal rely wholly upon the insufficiency of the evidence to support the judgment, recognizing the rule enunciated in Eblen v. Eblen, 68 Wyo. 353, 234 P.2d 434, that this court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. Defendants contend, however, that the only evidence concerning any damage or misuse of the property is the showing that it was in good condition in February 1954 and in bad condition September 1, 1959, whereas the lease did not begin until September 1, 1954, and there is no showing that the property deteriorated or was misused between the initial and terminal dates of the lease. To this, plaintiffs respond that the defendants "were charged with the conditions at the time the agreement was entered into and possession under the lease given to the tenant."

The propriety of the principal judgment would seem then to depend upon the answer to the question, Was defendants' taking possession of the premises at the date of the lease a receipt thereof under the provisions of those paragraphs in the lease which stated:

"Second party agrees that it has received these premises in good order and condition and that at the expiration hereof it will surrender said premises in as good order and condition as when received ordinary wear and tear

and loss by fire and act of God alone excepted.

"Second party agrees herein that it will keep all fences and buildings in repair and first parties agree to furnish all materials, wire and posts necessary or if second party shall supply the same they may receive credit on rental payments for all such materials so furnished." [2]

The litigants cite no direct precedent to substantiate or justify their respective positions but instead rely on statements so general in nature that they are scarcely helpful. Defendants quote 51 C.J.S. Landlord and Tenant § 416:

"The burden is on the landlord * * * to show the condition of the premises at *the commencement and at the termination of the term* * * *. (Emphasis supplied)"

And plaintiffs respond with § 408 from the same authority:

" * * * the law imposes on a tenant the obligation to return the premises at the termination of the tenancy substantially *in the same condition as when he received possession* * * *. (Emphasis supplied)"

A single statement from Miller v. Bellknap, 75 Idaho 46, 266 P.2d 662, 665, is quoted by both parties:

" * * * When he has shown the condition of the property at the time he delivered it to the tenant, and its condition when surrendered * * * the landlord makes out a prima facie case * * *."

Defendants contend that plaintiffs failed to sustain the burden of proving damages since there was no evidence submitted on the condition of the premises at the time of the commencement of the lease, September 1,

---

2. It is unnecessary to consider here the holdings of some courts that a covenant to keep and surrender premises in a good state obligates the tenant not only to keep them thus but to place them in good repair if they are not so at the time of the letting. See Lehmaier v. Jones, 100 App.Div. 495, 91 N.Y.S. 687, together with the following authorities in which that case has been cited: Yakima Valley Motors, Inc., v. Webb Tractor & Equipment Co., 14 Wash.2d 468, 128 P.2d 507; Wolfe v. White, 119 Utah 183, 225 P.2d 729; Annotation, 45 A.L.R. 12, 20, 84.

1954, but all of it related to a period more than six months earlier. They overlook the fact that in their lease they stated that they had received the premises in good order and condition. Undoubtedly this statement is true. The testimony of Ward is significant on that point:

"Q. Are you familiar with the Cornelison Ranch about which there has been testimony here? A. I am.

"Q. When did you visit that ranch? A. Well, in January of '53—'54 I should say.

"Q. And did you have occasion to go over and inspect the whole ranch? A. Yes.

"Q. For what purpose? A. Well, it was just part of my job to go over and see the fences and stuff, to see in what condition the thing was in as a whole.

"Q. Was the LAK contemplating taking a long term lease on the place? A. Well, he had leased it at that time. What I mean, it was a carry-over through a purchase. In other words we had cattle up there at that time.

"Q. Was the carry-over from the prior owner of the LAK? A. Correct."

The statement in the lease is self-explanatory, but in any event, Ward's testimony clarified the matter beyond question. Defendants' agreement as to the receipt of the premises in good order and condition made no reference to September 1, 1954, but stated the present fact of having received the premises. Regardless of any circumstances or condition which may or may not have obtained in a prior lease, defendants thereby contracted to return the premises at the expiration of the lease in as good order and condition as they were at the time of their receipt on February 26, 1954. If defendants had some mental reservation on the subject of their having received the property at the date of the lease, this fact should have been embodied in that instrument, or at least explained to the district court in the trial of the cause.

Since there was substantial evidence that the property was damaged between the date of the acknowledged receipt by the tenant and the time the premises were surrendered to the landlord in an amount equal to or greater than that found by the court, the principal judgment must be affirmed.

As to the appeal from the portion of the judgment allowing the tenants a counterclaim of $833.34 (Case No. 3004), plaintiffs recognize the rule that every inference favorable to the appellees must be given to the evidence, but they insist that even so it is insufficient to sustain the judgment because there was no showing of an expulsion of the tenant from the property and no proof of money damages. Defendants respond that although they are unaware of the theory used by the court in resolving the counterclaim in their favor this portion of the judgment is sustainable on any one of several bases, that is, actual eviction (which would relieve them of paying rentals), breach of covenant for quiet enjoyment, tort in the nature of trespass, and implied agreement for compensation.

The situation was not an easy one for the trial court to resolve. Defendants' counterclaim was based upon the pasturage by plaintiffs of certain animals upon the leased premises. Plaintiffs' defense thereto was grounded upon the defendants' having paid "numerous lease payments without mention of said incident." Perhaps, because the litigants were interested principally in other phases of the litigation, there was a paucity of proof on both the counterclaim and the defense interposed thereto.

It is desirable to here review the facts disclosed by the record as they related to the counterclaim. Defendants concede that the $2,500 semi-annual installment of rent due September 15, 1956, was not paid until some time in January 1957, the exact time being placed variously from January 1 to February 1. In June 1956 plaintiffs wrote defendants, stating that they had unofficial information that defendants intended to cancel the lease and asking for a reply. Defendants responded that they would be

willing to enter into an agreement satisfactory to plaintiffs to terminate the lease, whereupon plaintiffs in their letter of June 14, 1956, stated that "Mr. and Mrs. Cornelison have been advised that they must act to minimize their damages. Their doing so must not be construed by System Terminal as a re-entry of the premises or acceptance of possession." There was no showing of the date on which the rental installment due January 15, 1957, was paid; neither was there any statement as to the date of subsequent payments, although at the trial Mrs. Cornelison testified that all the rent payments under the lease had been made. Cornelison said that the reason for his bringing Fawcett and the livestock on the place was that defendants had "quit" it and that he was surprised when they moved back because they had not told him they were going to and other evidence indicated they had turned it in. Defendants' manager Brown, who replaced Ward in 1955, testified that he had taken the cattle off the leased premises in November 1956. Brown said that he had left defendants' employ in April 1957 and did not know when cattle was again brought on the ranch. Fawcett stated he had seen certain of defendants' animals there in February or March 1957, and Brown conceded that this might have been true. Brown also testified that he had talked to Cornelison in January 1957 and asked him about Fawcett's being on the place, but at that time made no request for the return of the property. In March, although defendants were not immediately desirous of moving cattle in, Brown asked Cornelison how soon plaintiffs could vacate the place. Cornelison responded that they would be off as soon as Fawcett completed the lambing. They did not leave, however, until May 1.

■ Construed reasonably, this evidence tends to show that there was no wrongful taking over of the premises on November 15 since there was an apparent breach of the lease by the lessee and a leaving of the premises without someone in attendance, which situation required the landlord to make a reasonable effort to mitigate damages which might arise therefrom. Weinsklar Realty Co. v. Dooley, 200 Wis. 412, 228 N.W. 515, 67 A.L.R. 875; Burkhalter v. Townsend, 139 S.C. 324, 138 S.E. 34; 51 C.J.S. Landlord and Tenant § 250, p. 888. However, plaintiffs by the acceptance of the rental in January impliedly agreed that the defendants were to be reinstated in all rights which they had previously had under the lease, including that of possession. See Larsen v. Sjogren, 67 Wyo. 447, 226 P.2d 177; Perry v. Waddelow, 351 Ill.App. 356, 115 N.E.2d 348; Id., D.C.E.D.Ill., 145 F.Supp. 349; 1 Tiffany, Real Property, § 207 (3 ed.).

■ Defendants presented no proof of damages which were suffered by plaintiffs' pasturage, but the record is clear that they paid rental for a period of five and a half months during which plaintiffs were in at least partial possession, some four months of which were after plaintiffs' acceptance of the September 1956 installment of rent. Defendants' pleading on the counterclaim must be taken to be amended to conform to the proof. Savage v. Town of Lander, 77 Wyo. 157, 309 P.2d 152.

■ Defendants urge the generally accepted rule that wrongful eviction by a landlord of a tenant from a part of the premises will relieve the latter from liability for the entire rent for the time the partial eviction continues, though he retains possession of the part from which he was not evicted, citing Annotation, 41 L.R.A., N.S., 430. See 32 Am.Jur. Landlord and Tenant §§ 480, 482 (1941); 52 C.J.S. Landlord and Tenant § 480 d; Annotation, 31 Ann.Cas.1914A, 1230; 1 Tiffany, Real Property, § 146 (3 ed.); 3 Tiffany, Real Property, § 906 (3 ed.).

■ Plaintiffs respond that payments not actually owed if voluntarily made are not recoverable back and if payment of rent demanded of a tenant is deemed voluntary in law the tenant cannot recover, citing 32 Am.Jur. Landlord and Tenant § 472 (1941). No cases are presented, and a research of the authorities does not disclose any similar situation to which the rule was applied.

**96**

While the general principle has been accepted in this jurisdiction, Fulton v. Des Jardins, 67 Wyo. 517, 227 P.2d 240, we are unpersuaded that it should govern the instant case, especially when the situation was as nebulous and confused as it was during the first months of 1957. Moreover, the record is devoid of any evidence which would prove plaintiffs' separate defense to the counterclaim that "since the date of the incident * * * [which we take to mean plaintiffs' presence on the leased premises] defendants have paid to the plaintiffs numerous lease payments without mention of said incident." In order to now rely on such a defense, plaintiffs were obligated to have proved the dates of payment of the rent installments and the voluntary nature thereof.

There was substantial evidence before the court to warrant the judgment on the counterclaim.

Affirmed.