[S. F. No. 5127.   Department One.—September 23, 1909.]

## WILLIAM B. PRINGLE, Appellant, v. WILLIAM WILSON, Respondent.

LEASE—MEANING OF EXPIRATION OF TERM—CONSTRUCTION.—The phrase "expiration of the term," as used in a lease, ordinarily means an ending of the term by the lapse of the time provided in the lease for its duration. However, in construing such expression in a particular lease, the sense in which the words were used by the parties must be determined by a consideration of the instrument as a whole.

ID.—LEASE FOR DEFINITE TERM—COVENANT TO PAY FOR IMPROVEMENTS—TERMINATION OF LEASE BY TOTAL DESTRUCTION OF PREMISES.— The lease in question was for a definite original term expiring on August 31, 1911, for a total specified rental payable in monthly installments, and provided for an extension to the term for a further period, at the election of the lessee, to be given by written notice by him at least four months prior to the termination of the original term. The lessee covenanted to make certain improvements on the demised premises, and the lessor agreed that "at the expiration of the original term hereby created, viz., the term expiring on the 31st day of August, 1911," he would repay the cost thereof, upon the then production of the original vouchers, provided that if the lessee elected to extend the term, the lessor should not be liable to pay the lessee for such cost. The lease further provided that in the event of the total destruction of the premises by fire or earthquake the lease should terminate, and the parties thereto should be "freed from all liability hereunder." On the eighteenth day of April, 1906, the premises were totally destroyed by fire and earthquake. *Held*, that the obligation of the lessor to repay the

cost of such improvements depended upon the expiration of the original term by lapse of time, and not upon the termination of the lease by reason of the total destruction of the premises, and that upon its termination by the latter cause the obligation to repay was ended.

ID.—HARDSHIP ON LESSEE.—Such being the proper construction of the lease, its effect cannot be varied by any supposed hardship that it might impose on the lessee.

ID.—UNIFORMITY IN CONSTRUCTION OF SAME WORDS.—Other things being equal, words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another.

ID.—RELEASE FROM LIABILITY HEREUNDER—CONSTRUCTION OF PHRASE. —In the provision of such lease, providing that the parties, in the event of the total destruction of the premises, should be freed from liability hereunder, the word "hereunder" refers to the entire lease, and not solely to the particular paragraph in which it occurs.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Pringle & Pringle, Henry E. Monroe, and William S. Andrews, for Appellant.

Jacob Samuels, and Oscar Samuels, for Respondent.

SLOSS, J.—This is an appeal by plaintiff from a judgment entered against him upon an order sustaining defendant's demurrer to his complaint.

The facts, as averred by plaintiff, were these: On March 23, 1905, the defendant was the owner of a lot in the city of San Francisco located on the southerly line of Post Street and running through to the northerly line of Union Square Avenue. The lot was covered by two separate brick buildings, one of which faced on Post Street and the other on Union Square Avenue. On the day named said defendant, Wilson, by a written lease, demised and let the said premises to plaintiff for the term of six years and four months, commencing on the first day of May, 1905, to and including the thirty-first day of August, 1911, for a total rental of seventy-six thousand dollars, payable monthly in advance, in installments of one thousand dollars each on the first day of each

month during said term. The agreement between the parties contemplated the making of certain alterations and improvements upon the premises and for this purpose the lessee was by the lease granted permission to take possession on the first day of April, 1905. The lease contains a great many provisions which are not necessary to be set forth here. The main controversy between the parties arises over the construction of clauses thirteenth and fourteenth, which read as follows:—

"Thirteenth: That in the event of the partial destruction of the premises hereby demised by fire, earthquake, or any other cause, beyond the control of the party of the first part, this lease shall not be thereby invalidated or voided, but the lessor shall proceed to at once make the necessary repairs to said premises and to complete the same within a reasonable time, and that during the time of said repairs said lessee shall pay a proportional rental for such portion only of the premises as he may use and enjoy; but if said premises be totally destroyed, then and in such event this lease shall terminate, and the parties hereto shall be freed from all liability hereunder.

"Fourteenth: That as a condition precedent to the taking effect of this lease and the vesting of the leasehold interest hereby created, said party of the second part (lessee) agrees, upon the delivery of the possession of said demised premises as herein provided, to forthwith proceed to make improvements upon and alterations to the said demised premises, in accordance with plans and specifications therefor to be prepared by the said party of the second part, or his architect, and to be acceptable to and approved by the said party of the first part (lessor), or his architect, and thereafter, with due diligence, to prosecute to a completion the improvements and alterations thus mutually agreed upon; and the said party of the first part agrees that at the expiration of the original term hereby created, viz., the term expiring on the 31st day of August, 1911, he will repay unto the said party of the second part the actual cost of said alterations to, and improvements upon the demised premises by said party of the second part made, all as aforesaid, provided that if the amount thereof exceed the sum of five thousand ($5000.00) dollars, said party of the first part will pay unto the said

party of the second part the sum of five thousand ($5000.00) dollars, and no more; and the said party of the second part agrees at the expiration of said term aforesaid, and at the time of said repayment, to produce original vouchers for any and all moneys by him expended as aforesaid, and reimbursement of which is by him sought from the said party of the first part; provided, however, that if said party of the second part shall elect to exercise his option for a renewal of this lease for a further period of five (5) years as in the next specific agreement provided, then and in such event no liability shall rest upon the said party of the first part to reimburse said party of the second part for any part of the money by said party of the second part expended for such improvements or alterations."

It may be well to refer also to clause fifteenth, which provides that the term may be extended for a further period of five years from and after the first day of September, 1911, if the lessee shall so desire, "said election of the party of the second part (lessee) to be announced by written notice of the exercise thereof to be given by the said party of the second part at least four months prior to the expiration of the original term herein created." The rental payable during the additional period of five years is fixed at the rate of $1,250 a month.

The complaint alleges that pursuant to the terms of the lease the plaintiff proceeded diligently to make the contemplated alterations and improvements, all with the approval of the defendant, and in so doing he expended more than the sum of five thousand dollars. On the first day of May, 1905, he entered into possession of the property and remained in possession thereof until the eighteenth day of April, 1906, upon which date there occurred a severe earthquake, followed by a conflagration which totally destroyed the buildings upon the property so leased. It is further alleged that the plaintiff has produced and exhibited to the defendant original vouchers showing that he expended more than five thousand dollars in making said alterations and has demanded of the defendant said sum, and that the defendant has refused to pay any part thereof. The complaint asks judgment for five thousand dollars with interest and costs.

The demurrer was on the ground of want of facts sufficient to state a cause of action and was sustained without leave

to the plaintiff to amend. No point is made of the refusal of leave to amend. Plaintiff has in his complaint set out his case as well as it can be stated, and if the facts set forth do not show any right of action, the court below was justified in entering judgment upon the sustaining of the demurrer.

Stated as briefly as it may be, the question is what is meant by the provision of the lease that "the said party of the first part agrees that at the expiration of the original term hereby created, viz., the term expiring on the 31st day of August, 1911, he will repay unto the said party of the second part the actual cost of said alterations to, and improvements upon the demised premises by said party of the second part . . ." The contention of the respondent is that the expiration of the term referred to in this language is the ending of the period of time first named in the lease, i. e. the period of time running from the first day of May, 1905, to and including the thirty-first day of August, 1911. The appellant, on the other hand, claims that the expiration of the term is its end or termination in any manner, or, at least, in any manner that may be provided for by the language of the lease itself. Under clause thirteenth it is provided that the lease shall terminate in the event of the total destruction of the building by fire or earthquake, and such termination, it is claimed, vested in the lessee the right to repayment of such sum, not exceeding five thousand dollars, as he had expended in making the alterations.

We need not enter into a prolonged discussion of the distinction, if there be any, between the phrases "expiration of the term" and "termination of the term." Ordinarily, it appears, the former phrase is taken to mean an ending of the term by the lapse of the time provided in the lease for its duration. (18 Cyc. 1506; *Stuart* v. *Hamilton,* 66 Ill. 253; *Finkelmeier* v. *Bates,* 92 N. Y. 172; *Reed* v. *Snowhill,* 51 N. J. L. 162, [16 Atl. 679].) This is the meaning that has been given to the expression as it is used in unlawful detainer statutes giving to the lessor certain rights where the lessee holds over after the expiration of the term. (*Oakley* v. *Schoonmaker,* 15 Wend. 226; *State* v. *Bryant,* 29 Minn. 432, [13 N. W. 676]; *Stuart* v. *Hamilton,* 66 Ill. 253.) Such, too, is the construction given by this court to section 1161 of the Code of Civil Procedure providing that the tenant is guilty

of unlawful detainer when he continues in possession "after the expiration of the term for which it is let to him . . ." (*Silva* v. *Campbell,* 84 Cal. 420, [24 Pac. 316].)

There are, on the other hand, cases giving to the words "expiration of the term" the construction contended for by appellant. (*Wrotesley* v. *Adams,* 1 Plowd. 187; *Marshall* v. *Rugg,* 6 Wyo. 270, [44 Pac. 700, 45 Pac. 486].) The question is not, however, what this expression might mean if it stood alone, or if it were used in some connection other than that appearing here. We must determine the sense in which the words were used by the parties to this lease, and to so determine we must look to the instrument as a whole. In the first place, it will be observed that the covenant to repay itself contains words of definition and explanation. The party of the first part agrees to repay the cost of alterations "at the expiration of the original term hereby created, viz., *the term expiring on the 31st day of August, 1911.*" The italicized words furnish a strong indication that the parties used the words "expiration of the original term" as meaning its ending by lapse of time. The "expiration" of the term is the time or occasion of its "expiring," and such "expiring" will, as the lease declares, take place on the thirty-first day of August, 1911. The appellant attempts to explain this additional descriptive phrase by suggesting that it was inserted to distinguish the first term from the optional term to begin on September 1, 1911. But this purpose had already been accomplished by the use of the word "original" to qualify "term."

Again, the obligation to repay is not absolute. It is conditional upon the lessee not electing to take a renewal of the lease. Such election is, under clause fifteenth of the lease, to be evidenced by written notice to be given at least four months prior to the "expiration of the original term herein created." Here the phrase "expiration of the original term" is undoubtedly intended to mean the termination of the original term by lapse of time. The lessee certainly could not give notice of an election to renew four months before an ending of the term which might occur by destruction of the premises, or in any other manner that could not be foreseen. The parties, accordingly, must have contemplated that the event upon which the obligation to repay depended would

not be ascertained until at or near the end of the five-year-and-four-month period, and this furnishes strong support for respondent's contention that the term "expiration of the original term" in clause fourteenth was used in the sense of ending by lapse of time.

The use of the phrase "expiration of the original term" in clause fifteenth aids in a further manner in the interpretation of clause fourteenth. It is a familiar rule of construction that, other things being equal, words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another. As we have seen, the language in question, as found in clause fifteenth, was clearly used to mean the end of the period of time first fixed. The words "expiration of the term" occur in two other parts of the lease, and it cannot be said to be clear that in either instance they were intended to convey a different meaning. In the latter part of clause fourteenth the lessee agrees "at the expiration of said term aforesaid" to produce original vouchers for any and all moneys by him expended as aforesaid. This is immediately followed by the proviso that no repayment should be made in the event of an election by the lessee to exercise his option of renewal, and a reading of the two provisions together would seem to indicate that the agreement to furnish vouchers had reference to the time when the lessee's right of occupation would cease by reason of his failure to notify the lessor of his election to hold the premises for an additional term, i. e. to the end of the first period of five years and four months. Paragraph seventh of the lease requires the lessee "at the expiration of the said term to surrender the premises in the same condition as by him received, reasonable use and wear thereof, etc., excepted." Whether the phrase is here used in the sense of ending by lapse of time or by termination in some such way as voluntary surrender may be open to doubt. Two cases dealing with this question are cited and they are in conflict. (*Marshall* v. *Rugg*, 6 Wyo. 270, [44 Pac. 700, 45 Pac. 486] ; *Reed* v. *Snowhill*, 51 N. J. L. 162, [16 Atl. 679].) But certainly the clause did not bind the lessee to surrender the premises in good condition in the event of a destruction of the buildings, and consequent termination of the lease. No support for appellant's construction can be derived from clause seventh.

If, however, the foregoing considerations could leave any doubt as to the meaning of clause fourteenth, we think clause thirteenth plainly shows that the obligation to repay shall not exist in the event of the total destruction of the premises. That clause provides that "if said premises be totally destroyed, then and in such event this lease shall terminate, and the parties hereto shall be freed from all liability hereunder." It is probably true, as is in effect conceded by the parties, that this clause was not intended to end liabilities which had accrued before the destruction of the premises. It does, however, by its express terms, end all liability not then accrued under the terms of the lease. Appellant seeks to limit the meaning of this provision by construing its last word "hereunder" as referring only to liability under the particular clause (thirteenth). The word "hereunder" may, it is true, refer to an entire instrument or to only a particular part of the instrument in which it appears. (*In re Pearsons*, 96 Cal. 603, [33 Pac. 451].) As here used, however, the word would seem necessarily to refer to the entire lease. The clause releases both parties from all liability. But no liability was cast upon either party by clause thirteenth itself in the event of a total destruction. The only liabilities mentioned were those existing in the case of a partial destruction which is not covered by the latter part of the clause. To read the word "hereunder" as contended for by appellant would therefore make it meaningless. Again, the principal, if not the only liability provided for in the lease as a whole on the part of the lessor (after the lessee shall have gone into possession) is the liability to repay the cost of alterations. Why should it be held that this is not terminated by the occurrence of an event which, under the agreement, is to free *both* parties from *all* liability?

It is useless to go into a further analysis of the provisions of the lease. It seems clear to us upon a reading of the instrument in its entirety that the court below properly held that the obligation to repay was ended with the total destruction of the buildings.

The appellant seeks to overcome this construction by insisting upon the inequitable results that would follow from its adoption. If the language used by the parties is clear and unambiguous, its effect cannot, of course, be varied for the

mere reason that it appears to evidence an improvident or unfortunate bargain. But, in fact, the supposed hardship does not inhere in the interpretation we have put upon the lease. It may well be assumed that the rent for the original term was fixed at a lower rate than it would otherwise have been because of the fact that the lessee was improving the premises at his own cost. During that term, the lessee, and he alone, would have the benefit of the improvements. At the end of that term they would pass into the possession of the lessor, who would then pay for them. But if the building, with these improvements, should cease to exist, where is the injustice in saying that the landlord shall not pay for what he cannot enjoy? If it be a hardship to compel the lessee to forego reimbursement for alterations to another's building, it must be remembered that the lessor would suffer in equal measure if compelled to pay the cost of improvements which could never come into his possession. The appellant supposes a destruction of the premises on the day preceding the expiration of the term, and asks whether this extreme case would not, on respondent's construction, subject the lessee to a burden which he could not have intended to assume. But the hardship is no greater than that which would, on the opposite construction, have been suffered by the lessor if the buildings had been destroyed at the very beginning of the first term. In that event the landlord would have been called on to pay an amount far exceeding the rent received by him under the lease.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.