### LYON v. GRAY. (No. 2716.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 3, 1926.)

1. Trial ⟺352(5)—Special issue as to plaintiff's agreement to pay taxes and interest held objectionable as submitting distinct issues.

Special issue submitting queston whether, during certain period, plaintiff had agreed to pay taxes due or to become due on land involved, and interest and installments due or to become due, held objectionable as submitting two distinct issues.

2. Contracts ⟺176(1)—Construction of contract between defaulting purchaser of land and holder of vendor's lien notes accepting reconveyance held for court.

Where defaulting purchaser of land conveyed to holder of vendor's lien notes, under contract entitling him to reconveyance, if, within 8 months, he succeeded in negotiating a resale or a loan, held question whether contract required him to pay taxes, interest, or install-ments, due or to become due during such 8-month period, was one for court.

3. Trial ⟺350(4)—Special issue as to liability under written contract between defaulting purchaser of land and holder of vendor's lien notes held immaterial and to present no question of fact.

Where defaulting purchaser of land conveyed to holder of vendor's lien notes, under written contract entitling him to reconveyance if, within 8 months, he succeeded in negotiating a resale or loan, held, in action for fraudulent refusal to carry out such contract, special issue as to whether plaintiff was required to pay taxes, interest, and installments during the 8-month period was immaterial and presented no question of fact, in view of evidence.

4. Covenants ⟺100(3)—Under covenant of general warranty, grantor is liable for accrued taxes.

Person conveying land by covenant of general warranty is liable, as a matter of law, for taxes already accrued, but not for payment of mortgage debt subject to which conveyance was made.

5. Trial ⟺350(4)—Special issue whether defaulting purchaser of land had seen defendant, holder of vendor's lien notes, about placing new loan held immaterial in view of further finding.

Where defaulting purchaser of land conveyed to holder of vendor's lien notes, under contract entitling him to a reconveyance if, within 8 months, he succeeded in negotiating a loan, held, in action for fraud in refusing to carry out such contract, special issue as to whether plaintiff and representative of mortgage company had seen defendant about the placing of a new loan was immaterial, in view of finding that plaintiff had placed himself in a position where he was offered and could have procured a loan, provided he had title.

6. Contracts ⟺176(1)—Submission of special issue whether conveyance by "a proper deed" was required to be by general warranty deed held improper.

Where defaulting purchaser of land conveyed to holder of vendor's lien notes, under contract entitling him to reconveyance by "a proper deed" if, within 8 months, he succeeded in negotiating a resale, held special issue as to whether reconveyance was to be by general warranty deed was immaterial and improperly submitted, in view of necessary construction of quoted language.

7. Contracts ⟺152—Words are deemed to have been used in same sense in different parts of contract.

Words used in one sense in one part of contract are deemed to have been used in the same sense in another part of same instrument, where context does not indicate otherwise

8. Trial ⟺350(4)—Special issue whether reconveyance was refused for nonpayment of taxes, installments, and interest due held improperly submitted, being for determination of court.

Where defaulting purchaser of land conveyed to holder of vendor's lien notes, under agree-

ment entitling him to reconveyance if, within 8 months, he succeeded in negotiating resale or loan, *held* special issue as to whether reconveyance was refused because of nonpayment of taxes, interest, and installments due was improperly submitted, being matter which court should have determined on findings of jury with reference to each of the items mentioned.

**9. Trial ⬳356(1)—In action for fraudulent refusal of holder of vendor's lien notes to carry out contract with purchaser, special issues submitted held material so that failure of jury to answer them constituted mistrial, under statute (Rev. St. 1925, art. 2202, subd. 1).**

Where defaulting purchaser of land conveyed to holder of vendor's lien notes under contract entitling him to reconveyance if, within 8 months, he succeeded in negotiating resale or loan, *held*, in action for fraudulent refusal to carry out contract, special issues as to whether plaintiff, if found to have negotiated loan, would have been able to pay amount due land bank and willing to execute certain new notes, both as required by contract, and issues whether defendant had refused to execute deed that would have enabled plaintiff to get loan, and whether refusal to execute deed, either to plaintiff or intended purchaser, damaged plaintiff, was material and such that failure of jury to answer them constituted mistrial, under Rev. St. 1925, art. 2202, subd. 1.

**10. Trial ⬳356(1)—Special issue as to plaintiff's damage for breach of contract held material and·such as should have been answered or mistrial declared (Rev. St. 1925, arts. 2202, 4004).**

Where defaulting purchaser of land conveyed to holder of vendor's lien notes under contract entitling him to reconveyance, if, within 8 months, he succeeded in negotiating resale or lien, *held*, in action for fraudulent refusal to carry out such contract, special issue as to plaintiff's damage was material and such as should have been submitted with instruction as to measure of damages, under Rev. St. 1925, art. 4004, and answered by jury or a mistrial declared, under article 2202.

**11. Continuance ⬳26(1) — Denial of motion for continuance held not error, no diligence being shown.**

Overruling of motion for continuance, in action for damages for fraudulent refusal to carry out contract between purchaser of land and holder of vendor's lien notes, *held* not error, no diligence being shown.

**12. Judgment ⬳199(1) — Trial court cannot render judgment, notwithstanding verdict, where special issues have been submitted and answered.**

Where special issues have been submitted and answered, court is not authorized to render judgment, notwithstanding verdict.

Appeal from District Court, Donley County; R. L. Templeton, Judge.

Action by J. W. Lyon against William Gray. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

See, also, 265 S. W. 1094.

E. O. Northcutt, of Amarillo, for appellant.

A. T. Cole, of Clarendon, and E. A. Simpson, of Amarillo, for appellee.

HALL, C. J. On the 6th day of October, 1921, Wm. Gray, as party of the first part, and J. W. Lyon, as party of the second part, entered into a written contract which contains preliminary recitals to the effect that theretofore, on the 31st day of December, 1918, "by a proper deed of conveyance," one W. M. Gray sold and conveyed to Lyon certain premises situated in Wheeler county and described in the contract; Lyon, as part payment for said land, executed and delivered to W. M. Gray 7 certain vendor's lien notes, containing the usual stipulation for 8 per cent. interest, 10 per cent. attorney's fees, and an acceleration clause; that afterwards W. M. Gray transferred the notes and the vendor's lien to Dr. Wm. Gray (the appellee in this suit), who was at the time of the execution of the contract the owner and holder of the notes, together with the superior vendor's lien; that Dr. Gray had instituted suit in the district court of Wheeler county against Lyon, praying for judgment upon the notes and foreclosure of the vendor's lien; that whereas, Lyon had found himself unable to pay the notes, and because both parties were desirous of effecting a compromise of the matters involved and dismissing the suit:

"Now, therefore, in consideration of the said Dr. Wm. Gray withdrawing and dismissing the above-mentioned suit, and in consideration of the premises hereinafter set out, the said party of the second part hereto, joined by his wife, Mary F. Lyon, has this day, by a proper deed of conveyance, sold and conveyed the land above described to the party of the first part hereto, in consideration of the cancellation and release of the above-described notes, and of the further consideration of the said party of the first part assuming the payment of a loan of approximately $3,300, heretofore secured from the Federal Farm Loan Bank at Houston, Tex. [less any payments as may have been heretofore made to this date], according to the face of said loan, and by virtue of said deed the title to said land above described is now vested in the party of the first part hereto, subject to' the amount due on the said above-mentioned Federal loan.

"Now, therefore, in consideration of the premises above set out, the said Dr. Wm. Gray hereby agrees to keep and, retain the title to the above-described property vested in himself for a period of 8 months from this date, unless a sale of same ·is effected within said period of 8 months, by the mutual agreement of himself and the party of the second part hereto, and the said Dr. Wm. Gray further agrees that if the party of the second part hereto, at any time during said 8-month period from this date, secures a purchaser for the land above described, who will pay to the party of the first part hereto, the sum of $2,082.76 in cash and further ex-

ecute and deliver to the party of the first part hereto the three promissory vendor's lien notes for the sum of $500 each, bearing interest from date until paid at the rate of 8 per centum per annum, and being vendor's lien notes against the land above described, and due one, two, and three years after date of said sale, and provided, said purchaser shall further agree and assume the balance due on the Federal loan heretofore mentioned, as being a first lien against the land above described, and release the said Dr. Wm. Gray from liability thereon, then and in such event the said party of the first part hereto binds himself to convey the property above described by a proper deed to such purchaser as party of the second part may secure and direct. Or, if the said party of the second part shall fail to secure a purchaser for the land above described within said period of 8 months from this date, according to the terms as set out above, but shall be able to negotiate a loan upon the land above described, from any source, within 8 months from this date, then the said party of the first part hereto further binds and obligates himself, in the event the party of the second part hereto is able to negotiate and make a loan against the land above described within 8 months from this date, and shall be able from the proceeds of said loan to pay off and satisfy the Federal loan above described as being a first lien against the land hereinabove described, and shall be able further out of the proceeds of said loan to pay and shall actually tender and offer to pay to the said party of the first part hereto $2,082.76 cash, then the party of the first part agrees to accept said sum of $2,082.76 in cash, and agrees to convey, by proper deed of conveyance, the land above described to the party of the second part, and the party of the second part further, in such event, agrees in addition to making said payment of such principal, interest, attorney's fees, and court costs, as above set out, to make, execute, and deliver to the party of the first part three vendor's lien notes for the sum of $500 each, due one, two, and three years after date of such sale, bearing interest at the rate of 8 per centum per annum, payable to the party of the first part, and retaining a lien against the land above described, and the party of the first part agrees to accept said notes as part payment upon said land and agrees to accept the same subject to whatever loan the party of the second part may negotiate in order to effect these premises.

"As a further consideration to the performance by the party of the first part hereto of either of the stipulations last set out, the party of the second part hereby, as a further consideration for his sale or his purchase of the land above described under the conditions last set out, agrees to pay all taxes due against the land, and also agrees to pay the interest and annual payments upon the Federal loan above mentioned, according to the tenor and reading of said loan.

"It is further agreed and understood by and between the parties hereto that if neither of the conditions to this contract are performed within the said period of 8 months, that is, if the party of the second part hereto does not procure a purchaser for said land under the conditions herein set out or does not secure a loan and thus become able to repurchase the land himself, under the conditions set out, within said 8 months, then, at the end of said 8 months from this date, this contract shall become null and void and all of the obligations upon either party hereto shall be at an end.

"It is further agreed that, if the said party of the second part fails to comply with any portion of this contract, the same shall be void, and all obligations on the party of the first part hereto shall cease and be of no effect.

"It is further agreed by and between the parties hereto that in case the party of the second part hereto fails to exercise either of the options hereinabove given to him, relative to the above-described land, by the 6th day of June, 1922, then the party of the first part hereto agrees to lease, let, and rent the above-described land to the party of the second part for a period of time beginning with the 6th day of June, 1922, and ending November 15, 1922, and, in consideration of such letting and leasing to the party of the second part, he agrees and binds himself to pay to the party of the first part, the sum of $250 for the use of said place for said period of time, and, without reference to the condition of the harvesting of crops that may be grown on said place by party of the second part during the year 1922, on the 15th day of November, 1922, the party of the second part agrees to vacate said premises and return the possession of the same to the party of the first part, but, in case the party of the second part so vacates said premises on the 15th of November, 1922, and shall leave ungathered on said place any crops planted by him during the year 1922, then the party of the first part agrees to cause the person who shall take possession of said premises on or after the 15th day of November, 1922, to gather such ungathered portions of said crops, and party of the second part hereby agrees to pay the reasonable customary wage for gathering said crops."

On account of the numerous contentions urged upon this appeal, it becomes necessary to set out the substance of the pleadings of the parties more fully than is ordinarily required.

The appellant, Lyon, filed his fourth amended original petition since the opinion of this court upon the plea of privilege was rendered at a former term. See 265 S. W. 1094. In this amendment he alleges that, prior to October 6, 1921, he was the owner in fee and in possession of the lands situated in Wheeler county, Tex., and described in the foregoing contract; he attaches a copy of the contract to his amended petition, making it Exhibit A; and that the defendant Wm. Gray was the owner of the indebtedness against said land; that, before the indebtedness became due, he realized that he would not be able to pay it at maturity and, in view thereof, made diligent effort to sell the property, and did, on February 7, 1920, enter into a valid, written contract for the sale of it to one J. N. Burcham. It is unnecessary to set out the terms of that agreement in detail. It is further alleged that subsequent to the date of that contract, on the 15th day of February, 1920, the defendant, Wm. Gray, came to him, intentionally and unlawfully and for the purpose of damaging him, and induced

him to cancel his contract of sale made with Burcham, by promising plaintiff that he (Gray) would assist him in retaining ·the property, and assured plaintiff that he (Gray) was not in need of the money due or to become due, or of the interest payments due or to become due thereon, and promised that he would extend the indebtedness as long as plaintiff was unable to pay the same or any part thereof, and specifically promised that he would extend the time of payment of any part or all of the principal or interest until the fall of 1921, at which time plaintiff would be able to gather and market his crops; that he relied upon said promises and canceled his contract of sale with Burcham; that he then went to Gray and informed him that he was ready to pay all interest due upon the notes, according to the agreement above mentioned, but, at that time, called. the defendant's attention to the fact that certain improvements should be made on the land, whereupon the defendant requested plaintiff not to pay the interest, stating that he did not need the money, and' that plaintiff should take the amount due and expend it in improving the premises, and that he would wait until plaintiff gathered his crop in the fall of 1921, at which time plaintiff could then pay the interest due; that he relied upon these promises; that, nevertheless, on the 26th of February, 1921, the defendant, Gray, brought suit in the district court of Wheeler county to recover ·the amount due on the notes and to foreclose the vendor's lien; that said suit was never tried for the reason of the execution of the contract attached to the petition and marked Exhibit A; and that because of the fraudulent promises which induced him to cancel the Burcham contract of sale· and enter into this contract he has suffered damages in the sum of $10,000; that said fraudulent promises were a part of a scheme on the part of ·Gray to defraud plaintiff and deprive him of his equity in the land; and that he relied upon said promises, and was damaged to the extent of $10,000.

The pleading next sets out that paragraph of the contract wherein it is alleged Gray binds himself to retain the title for a period of 8 months, during which time plaintiff would have the option of procuring a purchaser for the property in controversy, and alleges that under said option he did, about the 21st of April, 1922, contract to sell the land to Charles Oakley of Donley county, that Oakley's land was worth about $135 an acre, and that Gray consented that such sale might be made, and that he would transfer the indebtedness due him against the Wheeler county land to an indebtedness against Oakley's land; that Oakley's land was clear and free from all indebtedness, and Gray's indebtedness was to be secured by a deed of trust against Oakley's land; that plaintiff. was to have further time to secure a loan on

the 90 acres of Donley county land in order to pay Gray the sum of $2,082.76 cash, and, upon the payment of said sum, Gray agreed to take a second lien thereon to secure the remaining $1,500 of indebtedness due him; that, upon the faith of such promises, plaintiff and Oakley entered into a contract of sale for the exchange of their respective lands, and that Oakley was ready, able, and willing to consummate the sale and exchange deeds with plaintiff, but that the ·defendant fraudulently and willfully failed and refused to execute a proper deed of conveyance of the Wheeler county property to Oakley, and, by reason of that fact, plaintiff was not able to consummate the exchange and sale to Oakley, to the damage of plaintiff in the sum of $10,000; that the stipulations in the contract, marked Exhibit A, for a conveyance by "proper deed" bound Gray to convey said land by a general warranty deed; that Gray's refusal to execute such a deed was fraudulent and unlawful, and made with the intention of defrauding plaintiff, and resulted in plaintiff's inability to carry out his contract with·Oakley, as above said.

It is further alleged that, after Gray had fraudulently prevented plaintiff from consummating the contract with Oakley, the plaintiff endeavored to exercise the second option granted him in the contract to secure a loan upon said lands before the expiration of the period of 8 months for the purpose of paying Gray the $2,082.76 cash. together with principal, interest, attorney's fees, and costs, and did, on or about May 1, 1922, perfect an arrangement with the Federal Mortgage Loan Bank of Hobart, Okl., for a loan of $6,000, payable in 7 years at the rate of 7 per cent. interest, to be secured by a lien upon the land in question; that if said loan had been secured, plaintiff, with the proceeds thereof, would have paid off the loan due the Federal Land Bank of Houston, described in the above contract, and also paid the $2,082.- 76 and all taxes due against the land; and he alleges that he would have made such payments; that, in pursuance of such purpose, he requested defendant to convey the Wheeler county land to him by proper deed to enable him to incumber the same in securing said loan, but that Gray wrongfully and fraudulently refused to execute the deed to him, and that his failure to secure the loan was, because of Gray's fraudulent refusal to transfer the land, to his damage in the sum of $10,000; that all of Gray's false, fraudulent representations, conduct, and concealment in the matters set out were for the purpose of bringing about a forfeiture of plaintiff's right and interest in the property, and by reason of his fraud he is estopped· from taking any advantage of any of the conditions or provisions in said contract, or to plead the failure of plaintiff to perform any of such conditions and options; that such

fraud was intended to induce plaintiff to so act, and did induce him to his damage, and, by reason of such fraud, he was induced to lease the land under the terms of the last provision of said contract, and that the fraud of Gray estops him from pleading said lease in bar of plaintiff's damages.

It is further alleged that, while the contract does not specifically state that the deed, by which plaintiff and wife conveyed the land to Gray at the time the contract was entered into, should not be placed of record, nevertheless, it was the intention of the parties to said contract that said deed should not be placed of record, but that it should be placed in escrow in the First National Bank of Clarendon, together with a copy of the contract, and there remain for 8 months from the 6th day of October, 1921; that plaintiff thought such provision was in the written contract when he signed it; that it was the mutual intention of the parties that it should be incorporated therein, and that, in breach of said understanding, the deed was placed of record by Gray prior to the expiration of 8 months from October 6, 1921; that in pursuance of his fraudulent plan and scheme, and in violation of his fraudulent representations and promises, defendant Gray willfully, wrongfully, and maliciously sued out a writ of sequestration in cause No. 991 in the district court of Wheeler county, Tex., on January 4, 1923, and by means thereof, on January 11, 1923, had the sheriff of said county to wrongfully dispossess plaintiff of the land and improvements, to his damage in the sum of $10,000.

The defendant answered by general demurrer and 29 special exceptions, all of which were overruled. He further alleges, in substance, that on and prior to the 31st day of December, 1918, one W. M. Gray, who is not this defendant, was the owner of the land described in plaintiff's petition; that it was subject to a deed of trust lien securing the payment of an amortization note to the Federal Land Bank of Houston in the sum of $3,300, bearing 6 per cent. interest, and on said last-named date W. M. Gray sold and delivered said land to the plaintiff, Lyon, for a recited cash consideration and seven promissory notes, each retaining the vendor's lien, the first five of them being in the sum of $340 each and notes Nos. 6 and 7 in the sum of $433.75 each, due on the 1st day of January of each year, beginning 1920. The notes provide for the annual payment of interest; that past-due interest should bear interest at the rate of 10 per cent. and contain also the usual acceleration clause; that thereafter, about the 7th day of February, 1920, the said W. M. Gray transferred and assigned said notes to this defendant, conveying at the same time the vendor's lien to secure their payment; that on the 1st day of January, 1920, when the first annual installment of interest was due, Lyon defaulted and has ever since failed to make such payment; that on the 1st day of January, 1921, when the second annual installment of interest became due, defendant demanded that the interest be paid, and, upon the failure of Lyon to do so, defendant filed suit in the district court of Wheeler county, being cause No. 913 on the docket of said court, against Lyon to recover the amount due upon all of said notes, having declared said notes due and exercised his option to that effect; that thereafter, on October 6, 1921, the plaintiff requested defendant to give him a chance to sell the lands, assuring him that he could sell them in a short time for an amount sufficient to pay off the Federal Land Bank loan and satisfy all of defendant's indebtedness and leave a considerable margin for himself, and, after negotiations, plaintiff and defendant entered into the contract marked Exhibit A and attached to plaintiff's petition; that plaintiff, Lyon, agreed that he would reconvey the premises in full satisfaction of said notes, and, by the terms of said deed which was then executed, defendant assumed the payment of the balance due the Federal Land Bank, which deed the defendant caused to be recorded in Wheeler county; that it was executed in order that he might carry out the spirit of his contract further to hold the title to said lands, and in order that the said Lyon might have the benefit of the options specified in said contract; that Gray was bound by the terms of the contract to execute a deed conveying said lands to Lyon, or to such purchaser as he might find, and not otherwise, and it was made a special condition to the taking effect of said options, or any of them, that Lyon would pay the taxes due against the land and also pay all interest due on the Federal loan, and, in the event of such failure, the contract should become null and void; that Lyon wholly failed and refused, within the proper time after the execution of the contract, to pay the interest due on the 1st day of April, 1921, on the Federal loan, and on another due on the 1st day of October, 1921, aggregating $224.38, and he also failed to pay the interest due on April 1 and October 1, 1922, thereby forfeiting all his rights under the contract; that, at the time said contract was executed, unpaid taxes had accrued for the year 1916, in the sum of $13.60, with interest and penalties thereon since January 1, 1917; that the taxes for the year 1920 were then delinquent in the sum of $42.50, together with interest and penalties; that the taxes for the year 1921 were delinquent in the sum of $50.80, together with interest and penalties; all of which defendant failed and refused to pay, thereby forfeiting his rights and options under the contract. He alleges that at all times during the life of the contract he was ready, able, and willing to execute a deed to the plaintiff upon the pay-

ment to him of the said sum of $2,082.76, and the execution by plaintiff of the three notes for $500 each, provided the plaintiff would assume the payment of the Federal Land Bank note and pay the interest. He further alleges that he was ready, willing, and able to execute a deed to any purchaser whom the plaintiff might secure, upon tendering the said cash payment and the three notes for $500 each, and the assumption by said purchaser of the balance due on the Federal Land loan, notwithstanding plaintiff had defaulted in paying interest and taxes, "except, of course, the defendant would have demanded the payment of interest."

Defendant denies that plaintiff ever brought him a purchaser who tendered any cash, or who pretended he was able to pay any cash upon the conveyance of the land; that the plaintiff has never tendered any portion of the $2,082.76 or any other sum of money, or a loan by any loan company, and that no other person, on account of said transaction, has made such tender; that he never, at any time, agreed to file an application for a loan, or to execute any notes therefor, or any other papers for the purpose of securing a loan in the sum of $6,000, for the plaintiff or any other person, and that he never bound himself so to do. He denies that there was any agreement that he should withhold the said deed from Lyon and wife from record until after the 6th day of June, 1922, or that it was for any cause omitted from the contract; that there was an implied agreement that the deed should be promptly recorded; that in compliance with the terms of the contract he dismissed his suit in cause No. 913 in the district court of Wheeler county; that there was no contract in writing with Oakley for the sale or the exchange of any lands with plaintiff; that said 90 acres was the homestead of Oakley and wife; that said wife had never signed or acknowledged any contract for such sale, and it was therefore not binding; that he never agreed to execute a deed conveying the Wheeler county land to Oakley for a lien on Oakley's lands, and never agreed that the exchange should be made in consideration of the payment to him of $3,582.75, but that he was willing to convey the land, the said Oakley to assume the taxes then becoming due, as well as the delinquent taxes on the Wheeler county land, and to take a lien upon said lands for the $3,582.75, plus the amount he had been compelled to pay as delinquent taxes, interest, and penalties on the Wheeler county lands, which he had been compelled to pay by reason of Lyon's failure to do so, in order to prevent a foreclosure of the Federal Land Bank's loan; that he refused to give a warranty deed because of the delinquent taxes due on the lands, but that he would have executed a special warranty deed to Oakley. He pleads the statute of 2-year limitation against any damages resulting from the alleged wrongful issuance and levy of the writ of sequestration.

It is not contended that there is any ambiguity in the contract in any particular, and we do not pass upon that question.

[1] The case was submitted to the jury upon 17 special issues, 11 of them in the court's main charge, and the other 6 at the request of plaintiff. Only 3 of the issues were answered by the jury. Issue No. 1 is as follows:

"(1) Was it the mutual understanding between plaintiff and defendant that, during the period from October 6, 1921, to June 6, 1922, the plaintiff would pay the taxes due and to become due on the Wheeler county land, and the interest and installments due and to become due to the Federal Land Bank, by virtue of the Federal loan on said land?"

The jury answered this in the affirmative. In view of another trial, we suggest that this inquiry submits two separate and distinct issues raised by the pleadings and evidence, and for that reason is objectionable.

[2] Appellant insists that the issue is improper since it was the duty of the court to construe the contract, and it occurs to us that this contention is sound. The first clause of the contract which we quoted above recites that Lyon and his wife have conveyed the land by proper deed of conveyance to Gray, in consideration of the cancellation and release of the notes against it, and the further consideration that Gray assume the payment of the Federal loan, approximating $3,300, less any payments as may have been heretofore made to this date. We are not informed whether this $3,300 includes the unpaid interest and coupons which had accrued to the date of the contract, but this paragraph further recites that, by virtue of the deed, the title is vested in Gray, subject to the amount due on the Federal loan. Standing alone, this clause would seem to impose upon Gray the duty of paying all sums due or to become due during the 8 months to the Federal Land Bank. It seems, however, to be qualified by a subsequent clause which provides that, as a further consideration moving to Gray, Lyon agrees to pay all taxes, as well as the interest and annual coupons, due and to become due to the Federal Land Bank. Without undertaking to construe the contract, we suggest that the issue is raised by the pleading and the evidence as to whether these payments were a condition precedent to the transfer by Gray either to Lyon or his purchaser, under the options, or whether such sums might be paid out of the loan which Lyon intended to make, or to be assumed and paid by the purchaser secured by Lyon.

[3] The issue submitted and answered is immaterial and does not present a question of fact in the absence of evidence which would show that these payments were to be assumed by the purchaser or made by Lyon out of the loan, in the event he should exercise one or the other of the options given

him. The deed made at the time by Lyon and wife is a general warranty deed, but recites a cash consideration of $5,867.50 paid by Gray, and the assumption by Gray of approximately $3,300 due the Federal Land Bank, and the cancellation of 7 notes hereinabove mentioned.

[4] As a matter of law, the covenant of general warranty would bind Lyon to pay the taxes which had accrued and were a lien against the land at the time he executed the deed on October 6, 1921, but would not bind him to pay any of the debt due the Federal Land Bank. These considerations show that, at least, the first issue was improperly given, and the court could not base a judgment upon it because of its uncertainty.

[5] Another issue answered by the jury is:

"(5) Did Hatcher, representing the Federal Mortgage Loan Company [of Hobart, Okl.], or the defendant Lyon, or both said Hatcher and Lyon, see defendant, Gray, before June 6, 1922, about placing a loan on the Wheeler county land?"

This would seem to be an immaterial issue and a finding of an evidentiary fact only, in view of the affirmative answer to the only remaining special issue requested by the plaintiff, as follows:

"(1) Did the plaintiff, Lyon, between October 6, 1921, and September 1, 1922, place himself in position where he was offered a loan by and could have procured a loan from the Federal Mortgage Loan Company on the Wheeler county land, provided Lyon had the title to said lands in himself?"

It will be seen that this issue relates only to the option given Lyon in the contract of negotiating a loan and would have supported a judgment in favor of Lyon, if other issues raised had been submitted and answered favorably to Lyon.

We think the judgment must be reversed and the cause remanded under appellant's proposition that the court was not authorized to render a judgment upon the issues which were answered, in view of the fact that the jury failed to answer several material issues submitted to them.

[6, 7] By issue No. 2 the court asked the jury if, at the time of the agreement between Lyon, Gray, and Oakley concerning the exchange of lands, it was the understanding between Lyon and Gray that the instrument of conveyance of Gray to Oakley would be a general warranty deed. This issue is immaterial. In the first part of the contract, the deed from Gray to Lyon is referred to as "a proper deed" and in the first paragraph of the contract, which is quoted above, the deed from Lyon and wife to Gray is described as "a proper deed." The term "proper deed" is also used in specifying the character of the instrument by which Gray is to convey the lands to any purchaser found by Lyon in the

exercise of his option. A cardinal rule of construction of contracts is that:

"Words used in one sense in one part of a contract, are, as a general rule, deemed to have been used in the same sense in another part of the instrument where there is nothing in the context to indicate otherwise." 13 C. J. 532.

Reference to the two deeds referred to in the first part of the contract shows that they were general warranty deeds, and, since there is nothing in the context to indicate that Gray would be complying with the contract by the execution of any other form of a deed, we must presume that the contract bound him when he conveyed the title either to Lyon or Oakley to do so by a general warranty deed. Johnson v. Ford, 147 Tenn. 63, 245 S. W. 531; Abbott v. City of Galveston, 97 Tex. 474, 79 S. W. 1064; Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59; McMilan v. Mart (Tex. Civ. App.) 149 S. W. 270; Maupin v. Southern Surety Co., 205 Mo. App. 81, 220 S. W. 20; Pringle v. Wilson, 156 Cal. 313, 104 P. 316, 24 L. R. A. (N. S.) 1090.

[8] The next issue submitted is:

"If your answer to question No. 2 is 'Yes,' then, was the failure of Gray to make said deed caused by Lyon not having paid the taxes on the land in Wheeler county and the interest and installment due the Federal Land Bank on said land?"

The duty of the jury to answer this question is predicated upon an affirmative answer to the preceding question, and submits an issue which the court should have decided by construing the contract and upon findings by the jury with reference to the payment of each one of the items mentioned.

Issue No. 6 is identical with the special issue No. 1, requested by the plaintiff, and which the jury answered affirmatively, to the effect that Lyon could have procured the loan from the Federal Land Bank in Oklahoma.

[9] The next issue is:

"7. If your answer to question 6 is 'Yes,' then, would the plaintiff have been willing and able to pay off the amount due the Federal Land Bank on said land out of the said loan, and also the sum of $2,082.76 to the defendant Gray?"

It occurs to us that this presents a material question which should have been answered, since the contract, upon its face, does not seem to make the payment of the $2,082.76 a condition precedent to the conveyance of the land either to Lyon or his purchaser under the options.

The next issue inquires whether Lyon was ready and willing, upon the conveyance of the property to him by Gray, to execute the three promissory vendor's lien notes for $500, as provided in the contract. This is also a material issue.

The next issue (9) inquires if Gray refused to execute a deed to the plaintiff that would enable him to complete said loan. This was

a material issue, since Lyon was insisting that Gray should convey the land to him by general warranty deed, while, on the other hand, Gray insisted that he was willing to convey without a general warranty of title, the testimony being conflicting in both particulars.

The next issue (10) inquires whether Lyon was damaged by reason of Gray's failure to execute a deed either to Oakley or Lyon, and we think is a material issue.

[10] The next issue (11) inquires as to the extent of the damages resulting from Gray's failure. This was a material issue, but should have been submitted together with an instruction giving the measure of damages, as prescribed by Revised Statutes, article 4004. That article seems to have been ignored by the parties in the trial of this case, and we think it is controlling upon several of the issues. It provides as follows:

"Actionable fraud in this state with regard to transactions in real estate * * * shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract, and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith, but was prevented from complying therewith by the act of God, the public enemy, or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth, had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud shall be jointly and severally liable in actual damages, and, in addition thereto, all persons willfully making such false representations or promises or knowingly taking advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered."

The contract which is the basis of this suit recites that the land was sold at the date of the contract by Lyon and wife to Gray, and fraud is charged against Gray in the procurement of that sale. The contract itself further provides for an optional sale either to Lyon himself or to a purchaser to be procured by him, and fraud is also charged against Gray in the breach of both of said conditions. Fraud is further charged by way of estoppel against Gray in the matter of leasing the premises to Lyon after the contract had been forfeited by Gray.

[11, 12] It does not appear that the court erred in overruling Lyon's motion for a continuance. The motion was not a statutory motion and no diligence had been shown. Where special issues have been submitted and answered, the court is not authorized to render a judgment non obstante veredicto. Scott v. Farmers' & Merchants' National Bank (Tex. Civ. App.) 66 S. W. 485.

Revised Statutes, article 2202, subd. 1, provides that a verdict by a jury, in deciding special issues submitted to them, shall comprehend the whole or all of the issues submitted. Clearly, this verdict violates this provision of the statutes, and the rule is firmly established that where material issues are submitted to the jury, which they have failed to answer, the result is a mistrial, and the court should call the attention of the jury to such failure and give them further opportunity to answer the issue. In case of a failure or refusal to answer them, then the partial verdict should be set aside and a new trial ordered. Dixon v. Robinson (Tex. Civ. App.) 276 S. W. 770; Early-Foster Co. v. Burnett (Tex. Civ. App.) 234 S. W. 687; Dato v. George W. Armstrong Co. (Tex. Com. App.) 260 S. W. 380; Daniels v. Franklin (Tex. Civ. App.) 233 S. W. 380; Gulf, C. & S. F. Ry. Co. v. Saunders (Tex. Civ. App.) 286 S. W. 919.

We have not discussed the various propositions submitted in detail, but what has been said disposes of all the contention.

For the errors pointed out, the judgment is reversed and the cause is remanded.