[L. A. No. 23823.   In Bank.   Feb. 15, 1957.]

SUNSET SECURITIES COMPANY (a Corporation), Appellant, v. COWARD McCANN, INC. (a Corporation), Respondent.

Samuel B. Stewart, Hugo A. Steinmeyer, W. H. Taylor, Jr., and Walter S. Peake for Appellant.

Sheppard, Mullin, Richter, Balthis & Hampton, Gordon F. Hampton and Frank Simpson III, for Respondent.

Butler, Jablow & Weisman, Greenbaum, Wolff & Ernst, Harriet F. Pilpel, Mimi Obstler, Hays, St. John, Abramson & Heilbron and Irwin Karp as Amici Curiae on behalf of Respondent.

SHENK, J.—The plaintiff appeals from a summary judgment entered on a cross-complaint which determined in the defendant's favor its title to motion picture and other rights in the novel "Prelude to Night," subject to certain existing rights reserved to the plaintiff by a written agreement.

In 1944, all rights to the novel "Prelude to Night" were conveyed to the defendant by its author, Dayton Stoddart.

In 1945, the defendant copyrighted the novel. In 1946, the defendant entered into a written agreement with American International Picture Corporation under which American International was licensed to make, copyright, sell and exhibit a motion picture based on the novel. Ten years from the making of the agreement, all rights granted thereunder were to revert to the defendant unless the purchaser exercised an option to buy those rights upon payment of an additional $25,000.

The controversy relates to the construction and effect of the written agreement entered into between the defendant and American International Picture Corporation, the plaintiff's predecessor in interest. The defendant contends that unless the plaintiff at the expiration of 10 years exercised its option the copyright, license to exhibit and perform the motion picture, and other rights in and to the motion picture granted by the agreement would revert to the defendant. Although the defendant originally asserted title to the existing copies of the film through operation of the agreement that contention has been abandoned.

The agreement provided in its pertinent parts: "First: The Owner [defendant] does hereby give, grant, convey and assign unto the purchaser [plaintiff's predecessor in interest], its successors, licensees and assigns, for a term of ten (10) years from and after the date hereof, the following rights in and to the property:

"(a) The sole and exclusive motion picture rights and motion picture copyright throughout the world in and to said property.

"(b) The sole and exclusive right, throughout the world, to mechanically produce, reproduce and license the reproduction of spoken words taken from and/or based upon the text or theme of said Property on records, films or other devices . . . all or a part of the text, theme and/or dialogue contained in said property.

"(c) The sole and exclusive right to make, produce, adapt, sell, lease, rent, exhibit, perform and generally deal in and with and to copyright motion picture, and televised motion picture adaptations or versions of said Property . . . and to register and obtain copyright therein, throughout the world.

"(d) To include musical accompaniments in any such version of the property . . .

"(e) The right throughout the world to broadcast by means of radio . . . or by any processes analogous thereto,

all or any portion . . . of said property or of the motion picture or televised motion picture version or versions thereof. . . .

"Second: The Owner hereby grants to the Purchaser the right to publish and copyright, or cause to be published and copyrighted in the name of Purchaser or its nominee . . . synopses, abridged and/or revised versions of the Property. . . .

"Third: . . . Owner . . . reserves unto itself, for the term hereinabove specified, all other rights in and to the Property not expressly conveyed and granted to Purchaser herein. . . .

"Eighth: [The so-called reversion of rights clause] In full consideration of the rights herein assigned and granted to the Purchaser by the Owner, the Purchaser agrees to pay to the Owner the total sum of $10,000 upon the execution hereof, receipt of which sum is hereby acknowledged by the Owner. It is expressly agreed that upon the expiration of ten (10) years from and after the date of this agreement, all of the rights in and to the Property herein granted to Purchaser shall automatically revert to Owner unless Purchaser shall elect to pay to Owner on or before the expiration of said period of ten years, an additional sum of $25,000 in which event Purchaser shall acquire, absolutely and in perpetuity, all rights in and to the Property herein granted. It is within the contemplation of this agreement that the rights herein granted to Purchaser shall be for a limited term of ten (10) years and that Purchaser, at its option, shall have the right to acquire said rights forever upon the payment of said additional consideration to Owner for the expiration of said designated period.

"Ninth: This agreement shall bind and inure to the benefit of the parties hereto . . . and the rights herein granted may be freely assigned in whole or in part by the Purchaser, its successors and assigns."

The parties agree that the question on appeal turns on the construction of the written agreement above set forth. The question is: Does the reversion of rights provided for in the eighth paragraph include the right to the copyright of the film and all other rights enumerated in the first paragraph?

The plaintiff contends that the only rights which would pass to the defendant upon the termination of the agreement are rights "in and to the Property," and that "Property" is narrowly defined by the agreement which includes the

following statement: ". . . the Owner represents and warrants that Dayton Stoddart is the author of an original literary composition entitled Prelude to Night, hereinafter referred to as the Property. . . ." The plaintiff argues that the copyright on the novel and the copyright on the motion picture are separate and distinct rights. Thus, the plaintiff concludes, the copyright on the motion picture cannot pass to the defendant by the operation of the agreement because the copyright is not "Property" within the meaning of the reversion clause. ■ It is beyond question that every provision of a contract should be examined to determine the meaning and intention of the parties. (Civ. Code, § 1641; *Jones* v. *Pollock*, 34 Cal.2d 863, 866 [215 P.2d 733]; *Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474, 480 [19 P.2d 785].) Similarly, the meaning of words contained in a contract is to be determined not from a consideration of the words alone but from a reading of the entire contract. (*Moore* v. *Wood*, 26 Cal.2d 621, 630 [160 P.2d 772]; *Pringle* v. *Wilson*, 156 Cal. 313, 318 [104 P. 316, 24 L.R.A.N.S. 1090].)

■ It is apparent that the reversionary clause in paragraph eight purports to pass to the owner greater rights than those which would pass if "Property" were restricted to the literary composition alone. A reading of the granting clause together with the reversionary clause supports this conclusion. The granting clause does not purport to pass to the purchaser "the Property" alone but also, as the first paragraph shows, extensive rights relating to the exploitation of the novel for motion picture purposes. The phraseology of the granting clause is significant. There the owner grants, conveys and assigns to the purchaser for a limited term "the following rights in and to the Property." Then follows the enumeration of rights much more inclusive than the right to the literary composition alone. Turning to the so-called reversionary clause of paragraph eight, the parties agreed therein that unless the option were exercised, all of the ". . . rights in and to the Property herein granted . . ." would automatically revert. The identity of the language which grants particular rights with that which provides for reversion justifies the conclusion drawn by the trial court that the reversionary clause was intended by the parties to embrace the matters set forth in the granting clause. The parties contemplated that the rights "in and to the property" enumerated in the granting clause should pass to the purchaser by operation of the agreement. It is equally certain

that they intended that all of the rights "in and to the Property," as defined and enumerated in the granting clause should revert by operation of the agreement upon the failure of the purchaser or his assignee to exercise the option. The option had not been exercised, and the $25,000 had not been paid.

The plaintiff contends that the word "revert" as it is used in paragraph eight has a limited meaning and that it cannot include rights not in existence at the time of the agreement. Because neither the motion picture nor the copyright on the motion picture was in existence at the time of the grant, the plaintiff argues that they could not "revert" to the defendant. ■ Again, the meaning of the verb "revert" is to be considered in the context in which it is employed. (*Pringle* v. *Wilson*, *supra*, 156 Cal. 313, 318.) The eighth paragraph provides in effect that upon nonexercise of the option, *all* of the rights derived from such granting clause shall revert. Moreover, the same paragraph provides that the "rights herein granted" were for a limited period and that the purchaser obtained in addition only a "right to acquire said rights forever" upon the payment of the additional consideration. Thus the granting clause gave limited and existing rights to the purchaser and other provisions settled the interests of the parties in and to rights to be perfected under the agreement. In this context it is clear that the parties did not intend to limit the scope of the reversionary clause by a restricted interpretation of the word "revert." On the contrary it appears that they intended by the eighth paragraph of the agreement that all rights derived from those conferred by the first paragraph should pass to the owner if the option was not exercised. The trial court's conclusion to that effect was therefore correct.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.