PLATINUM RECORD COMPANY,
INC., Plaintiff,

v.

LUCASFILM, LTD., et al., Defendants.

Civ. A. No. 82–1018.

United States District Court,
D. New Jersey.

June 15, 1983.

Krieger, Ferrara, Flynn & Catalina by Frank E. Catalina, Jersey City, N.J., for plaintiff.

Goodman, Stoldt, Breslin & Horan by Roger W. Breslin, Jr., Hackensack, N.J., Townley & Updike, New York City, for defendants MCA, Inc. and Universal City Studios, Inc.

OPINION

CLARKSON S. FISHER, Chief Judge.

Plaintiff, Platinum Record Company, Inc., has brought suit against defendants Universal City Studios, Inc. and MCA, Inc. for breach of contract, misappropriation, unjust enrichment, and tortious interference with business opportunities. Defendants have moved for summary judgment on the merits. For the reasons outlined herein, the motion is granted.

In January 1973 Lucasfilm, Ltd. entered into an agreement (Agreement) with Chess Janus Records, plaintiff's predecessor-in-interest. Under this Agreement Chess Janus

gave Lucasfilm the right to use the "master recordings" or "matrixes" of four popular songs for use on the soundtrack of the motion picture *American Graffiti*.[1] The conditions for the use of the recordings were set out in paragraph 2 of the Agreement:

(f) Subject to our performance of the terms and conditions herein contained, you agree that we have the right to record, dub and synchronize the above mentioned master recordings, or portions thereof, into and with our motion picture and trailers therefor, and to exhibit, distribute, exploit, market and perform said motion picture, its air, screen and television trailers, perpetually throughout the world by any means or methods now or hereafter known.

Lucasfilm produced *American Graffiti* under a contract with Universal, and the film was released by a Universal subsidiary for national theatrical exhibition in August 1973. *American Graffiti* proved to be a major commercial success in its theatrical release and has subsequently been shown on cable television and on network and local television. In 1980 MCA Distributing Corp., a Universal affiliate, released the film for sale and rental to the public on video cassettes and video discs. This last distribution of the picture forms the basis of plaintiff's action before this court.

Plaintiff contends that its predecessor's Agreement with Lucasfilm, Ltd. (to whose rights defendants have succeeded) does not grant defendants the right to distribute *American Graffiti* on video discs and video cassettes. It asserts that the Agreement does not "speak for itself" in providing defendants with these rights. In any event, plaintiff believes it necessary to look beyond the actual terms of the Agreement to determine the parties' intent at the time of contracting. Plaintiff argues that the contracting parties' state of mind (as to whether or not video discs and video cassettes were to be included under the Agreement) remains to be determined, and that this presents a material issue of fact which precludes summary judgment at this point.

Paragraph 2 of the Agreement specifically gives defendants the right "to exhibit, exploit, market and perform [*American Graffiti*] perpetually throughout the world *by any means or methods now or hereafter known*" (emphasis added). This language is extremely broad and completely unambiguous, and precludes any need in the Agreement for an exhaustive list of specific potential uses of the film. As a previous motion-picture-related case cited by plaintiff itself has held, "[i]f the words are broad enough to cover the new use, it seems fairer that the burden of framing and negotiating an exception should fall on the grantor." *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 (2d Cir.1968). Similarly, in the recent case of *Rooney v. Columbia Pictures Industries*, 538 F.Supp. 211 (S.D.N.Y. 1982), a district court found that "[w]here ... a party has acquired a contractual right which may fairly be read as extending to media developed thereafter," the other party may not escape that part of the agreement by showing that the specific nature of the new development was not foreseen at the time. *Id.* at 229. It is obvious that the contract in question may "fairly be read" as including newly developed media, and the absence of any specific mention in the Agreement of videotapes and video cassettes is thus insignificant.

Plaintiff places great emphasis on its argument that the showing of *American Graffiti* on video discs and video cassettes is not an exhibition of the film as covered by the Agreement. It presents no clear-cut definition, however, which would set out exactly what does or does not qualify as exhibition of a motion picture. Plaintiff apparently does not feel that the term encompasses only theatrical showings, as it has registered no objections in the past to the repeated showing of *American Graffiti* on cable and over-the-air television. I am persuaded by the rationale adopted by the *Rooney* court when it found that "whether the exhibition apparatus is a home videocas-

**1.** The songs covered under the contract were "Almost Grown" and "Johnnie B. Goode," both recorded by Chuck Berry; "Book of Love," recorded by the Monotones; and "Goodnight Sweetheart," recorded by the Spaniels.

sette player or a television station's broadcast transmitter, the films are 'exhibited' as images on home television screens." *Rooney v. Columbia Pictures Industries,* 538 F.Supp. at 228. A motion picture is exhibited when it is presented for viewing by an audience on a theater or television screen; the video cassette and video disc operate as a means of exhibition, not as something of an altogether different nature from exhibition.

Finally, plaintiff insists that, even if the terms of the Agreement clearly give defendants rights to the music in question for home video presentation, we should look behind the written contract to determine whether the parties actually intended it to encompass this area. It has already been established that it is immaterial whether plaintiff anticipated all potential future developments in the manner of exhibiting motion pictures. There was no mistake as to the terms of the contract, as plaintiff alleges. Thus, there are no material facts remaining to be determined in this case.

Defendants' motion for summary judgment is granted. An order accompanies this opinion. No costs.