79 F.3d 1153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LEISURE TIME ENTERTAINMENT, INC. a/k/a "LTE", Plaintiff-Appellant,
v.
Cal VISTA, Defendant-Appellee.
 No. 94-56407.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1996.
Decided March 14, 1996.
 
 Before: BROWNING, WALLACE, and FARRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Leisure Time and Cal Vista entered into a series of contracts drafted by Cal Vista in which Leisure Time transferred "the exclusive right, under copyright, to exhibit, to distribute, sell and otherwise deal in and exploit" 257 adult films outside the United States and Canada. The contracts provide that California law governs disputes. This suit arises from Cal Vista's use of the Leisure Time originals to prepare derivative works. The district court rejected Leisure Time's contention that this right had not been transferred, and it granted Cal Vista's motion for summary judgment. We reverse.
 
 
 3
 If a contract is ambiguous, summary judgment is "improper" because "differing views of the intent of parties will raise genuine issues of material fact." U.S. v. Sacramento Municipal Utility Dist., 652 F.2d 1341, 1344 (9th Cir.1981). Whether a copyright transfer is ambiguous is a question of law determined by application of general principles of contract interpretation. See Beck Park Apts. v. U.S. Dept. of Housing, 695 F.2d 366, 369 (9th Cir.1982); Nimmer on Copyright § 10.08, 10-71 (1995).
 
 
 4
 Courts interpret contracts to give effect to the mutual intent of the parties. See Cal.Civ.Code § 1641; Sunset Sec. Co. v. Coward-McCann, Inc., 306 P.2d 777, 779 (Cal.1957). " '[T]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible.' " Barris Indus. v. World Vision Enter., 875 F.2d 1446, 1450 (9th Cir.1989) (citing Pac. Gas & Elec. Co. v. G.W. Thomas Drayage and Rigging Co., 442 P.2d 641, 644 (Cal.1968)). "Even if a contract appears to be absolutely clear on its face, the court is required to engage in a preliminary consideration of extrinsic evidence to see whether it creates an ambiguity." Id. The court may consider extrinsic evidence of post-contract acts if those acts were "positive and deliberate and done in attempted compliance with the terms of the agreement." Id. But extrinsic evidence "does not foreclose summary judgment" if it "is insufficient to render the contract susceptible to the non-movant's proffered interpretation." Id.
 
 
 5
 The 1976 Copyright Act provides that the owner of a copyrighted work has the rights:
 
 
 6
 (1) to reproduce the copyrighted work in copies ...;
 
 
 7
 (2) to prepare derivative works based upon the copyrighted work;
 
 
 8
 (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership ...;
 
 
 9
 (4) in the case of ... motion pictures and other audiovisual works, to perform the copyrighted work publicly; and
 
 
 10
 (5) in the case of [dramatic pictorial works], including the individual images from motion pictures or other audiovisual works, to display the copyrighted work publicly.
 
 
 11
 17 U.S.C. § 106. These rights are divisible. They may be "owned separately" and may be "transferred in whole or in part by any means of conveyance." 17 U.S.C. §§ 201(d)(1), 201(d)(2). Generally, if the transferee prepared the contract, the owner of the copyrighted work reserves those rights not expressly granted. See Warner Bros. Pictures, Inc. v. Columbia Broadcasting Sys., Inc., 216 F.2d 945, 949 (9th Cir.1954) ("The clearest language is necessary to divest the author of the fruits of his labor."); Nimmer § 10.08, 10-72.
 
 
 12
 We hold that the contracts do not contain an unambiguous transfer of the right to prepare derivative works. A fair reading of the transfer clause suggests that the right "to exhibit" conveys the right "to perform" under 17 U.S.C. § 106(4), and that the right "to distribute, sell and otherwise deal in" conveys the right "to distribute ... by sale" under 17 U.S.C. § 106(3). "[T]o ... exploit" is the only language that could have conveyed the right "to prepare derivative works." Webster's defines "exploit" to mean "to turn to economic account." Arguably, Cal Vista's interpretation is plausible; one way to turn films to economic account is to prepare and distribute derivative works. But Leisure Time's interpretation is also plausible. The word "and" connects "to distribute, sell and otherwise deal in" with "exploit." If "exploit" were intended to convey the divisible right to prepare derivative works, Cal Vista would have put the word "to" in front of it, just as the divisible right "to exhibit" was separated from the divisible right "to distribute...." The fact that Cal Vista did not do so suggests that it intended "exploit" to have a meaning similar to the words in the preceding string (i.e., "distribute", "sell", and "deal in").
 
 
 13
 The district court made several errors in concluding that there was no ambiguity. First, it failed to explain the extrinsic evidence in the record supporting Leisure Time's interpretation. Cal Vista waited six years before preparing its first compilation and contemplated forming a joint corporation with Leisure Time for the purpose of preparing and distributing compilation films. The long delay and the contemplation of an agreement to share profits are difficult to reconcile with the proposition that Cal Vista believed it had acquired the exclusive right to prepare compilations and distribute them outside the United States and Canada.
 
 
 14
 Second, the district court erred in holding that if a transfer of rights is broadly worded, the transferor has the burden of specifying the rights retained. All of the cases it cited involve the 1909 Copyright Act, under which the rights to a copyrighted work were indivisible, see Nimmer § 10.01, 10-5, or stand for the separate rule of construction that the transferor bears the burden of specifying those mediums in which the copyrighted work may not be used. See, e.g., Platinum Record Co., Inc. v. Lucasfilm, Ltd., 566 F.Supp. 226, 227 (D.N.J.1983) (transferee who acquires the right to "exploit" a film "by any means or methods now or hereafter known " may sell video cassettes and discs); Nimmer § 10.08, 10-72 n. 7 (courts use "specialized rules of construction" for determining "the medium to which an assignment ... applies").
 
 
 15
 Third, the district court erred in finding that if Cal Vista did not have the right to prepare compilations and distribute them outside the United States and Canada, then neither party had the right. Although it is reasonable to construe copyright contracts so that no rights are lost, neither the district court nor Cal Vista have cited authority for the implied rule that the owner of a copyrighted work who transfers the rights to distribute the work in a particular region necessarily loses the right to prepare and distribute derivative works in that region.
 
 
 16
 Because the contracts are ambiguous, summary judgment was inappropriate.
 
 
 17
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit as provided by 9th Cir.R. 36-3